UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LLOYD GEORGE MORGAN, JR.,
        Plaintiff,

    v.                                                                      CASE NO. 3:14-cv-966(SRU)

COMMISSIONER JAMES E. DZURENDA, et al.,
        Defendants.

## INITIAL REVIEW ORDER

The plaintiff, Lloyd George Morgan, Jr., incarcerated and *pro se*, has filed a Complaint under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.  He sues Commissioner James E. Dzurenda, Warden/Deputy Commissioner Scott S. Semple, District Administrator Angel Quiros, Director of Offender Classification Karl Lewis, Wardens Carol Chapdelaine, Edward Maldonado and Christine M. Whidden, Deputy Wardens Gary Wright and Sandra Barone, Captains McCormick and K. Godding, Unit Managers Manning and Jean Ott, Lieutenant Lizon and Correctional Officers Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm.  In addition to filing a Complaint, the plaintiff has filed a motion to expedite a review of the Complaint, a motion for appointment of counsel and motion seeking injunctive relief.  For the reasons set forth below, some claims in the Complaint will be dismissed and other claims will proceed, the motions to expedite, for appointment of counsel and for protective order will be denied.

**I.**    **Complaint**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

The plaintiff asserts that in August 2012, he was incarcerated at Garner Correctional Institution ("Garner"). In mid-August 2012, he sent a letter to Commissioners Arnone and Dzurenda asking that he not be transferred to Osborn because he had been assaulted at Osborn on two occasions in the late 1980's and early 1990's. In July 2013, Warden Semple and Director of Population Management Lewis issued an order that the plaintiff to be transferred to Carl

Robinson Correctional Institution.

During the plaintiff's confinement at Carl Robinson from July to November 2013, the plaintiff complained to Warden Whidden about other inmates at Carl Robinson who were gang members and who had threatened to harm him. The plaintiff requested that he be placed in protective custody. Warden Whidden denied the plaintiff's requests to be placed in protective custody in retaliation for prior lawsuits and grievances filed by the plaintiff against her. Warden Whidden also convinced District Administrator Quiros to uphold her decisions to deny the requests for plaintiff's placement in protective custody.

In October 2013, in response to a written letter from the plaintiff claiming that he feared for his safety, a lieutenant placed the plaintiff under observation in a restrictive housing cell. On November 8, 2013, defendants Whidden and Quiros transferred the plaintiff to Osborn despite their knowledge of his having been the victim of several assaults at Osborn in the late 1980's and early 1990's.

Upon his admission to Osborn, prison officials placed the plaintiff in a unit known for housing gang members. From November 14, 2013 to January 4, 2014, the plaintiff complained to Unit Manager Goddard, Warden Chapdelaine and Captain McCormick verbally and in writing about harassment and threats issued by gang members at Osborn.

On January 5, 2014, the plaintiff informed Correctional Officers Lindsey and Maldonado that his cellmate had threatened to harm him and he feared for his safety. Later that day, the plaintiff's cellmate assaulted him in the shower. Prison officials investigated the incident and issued the plaintiff's cellmate a disciplinary report for assault.

Later in January 2014, the plaintiff requested that he be placed in protective custody. A

correctional counselor recommended that the plaintiff's request be granted. In February 2014, Warden Maldonado, District Administrator Quiros, Director of Population Management Lewis, Deputy Commissioner Semple Commissioner Dzurenda and Deputy Warden Barone denied the plaintiff's request to be placed in protective custody in retaliation for prior lawsuits and grievances filed by the plaintiff against them. Correctional Officers Gonzalez, Torres, Lizon, Ulm, Leiper and Clayton called plaintiff a snitch in front of other inmates. Defendants Lizon, Wright, Warden Maldonado, Manning and Barone conspired to cover up the behavior of Gonzalez, Torres, Ulm and Lieper.

In May 2014, the plaintiff sent multiple requests to Deputy Warden Wright seeking an investigation into gang activity and his placement in the special housing unit. The plaintiff alleges that Deputy Warden Wright determined that he did not meet the criteria for special housing placement and ignored the plaintiff's allegations that he feared for his safety due to threats by gang member inmates at Osborn.

The plaintiff claims that the defendants violated his rights under the First, Fifth, Sixth and Eighth Amendments as well as his rights protected by the ADA. The plaintiff asserts state law claims of negligence and intentional infliction of emotional distress.

      A.      **Transfer Claims Against Defendants Lewis and Semple**

The plaintiff alleges that in August 2012, he wrote to defendant Arnone and requested that he not be transferred to Osborn. In July 2013, Director of Offender Classification and Population Management Lewis and Warden Semple allegedly ordered that the plaintiff be transferred from Garner to Carl Robinson.

Inmates have no constitutional right to be housed in any particular correctional facility.

*See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").  The plaintiff does not allege that he was concerned about being transferred to Carl Robinson.   Thus, the allegations that defendants Lewis and Semple were responsible for the decision to transfer the plaintiff from Garner to Carl Robinson do not rise to the level of a constitutional violation.  All claims against defendants Lewis and Semple related to the plaintiff's transfer from Garner to Carl Robinson in July 2013 are dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

      **B.**      **Fifth and Sixth Amendment Claims**

The plaintiff generally asserts that the defendants violated his Fifth and Sixth Amendment rights.  The Fifth Amendment applies to the federal government, not to the states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (holding that any due process claim against the city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment").  The Court liberally interprets the plaintiff's Fifth Amendment due process claims as brought under the Fourteenth Amendment.  The Court addresses the plaintiff's Fourteenth Amendment due process claims in the next section of this ruling in connection with the plaintiff's allegations pertaining to good-time credits.

The Sixth Amendment provides:

> [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

U.S. Const. amend. VI. The plaintiff does not include facts to state a claim that any of the defendants violated his rights under any provision of the Sixth Amendment. Thus, the Sixth Amendment claims are dismissed as lacking an arguable factual or legal basis pursuant to 28 U.S.C. § 1915A(b)(1).

    **C.**    **Fourteenth/Fifth Amendment Good Time Credit Claim**

In addition to his claims of failure to protect and retaliation, the plaintiff also includes allegations pertaining to a loss of good time credits. He asserts that on April 30, 2013, he lost over 550 days of earned good-time credit and was subsequently denied the opportunity to earn over 230 days of good time credit. The plaintiff claims defendants Semple, Quiros, Dzurenda and Barone failed to provide him with a hearing prior to depriving him of earned good time credits in violation of his rights under the Due Process Clause of the Fifth and Fourteenth Amendments.

Any challenge to the duration or validity of the plaintiff's incarceration or confinement should be brought in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) (habeas corpus was appropriate remedy for inmates seeking restoration of good-conduct-time credits which would shorten the length of their confinement in prison); *Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) (holding that "where the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only

6

[habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed"). The plaintiff seeks an order that the Department of Correction defendants to reduce his sentence by over 700 days of prior good-time credits. Application of the good-time credits would result in an earlier release date for the plaintiff. Because a re-calculation of the plaintiff's release date cannot be granted in a civil rights action pursuant to section 1983, the plaintiff's Fifth and Fourteenth Amendment claims related to lost good-time credits are dismissed. *See* 28 U.S.C. § 1915A(b)(1).[1]

### D.  Americans With Disabilities Act

The plaintiff asserts that he suffers from very serious disabilities, including mental illness and diabetes. He generally claims that the defendants have retaliated against him for filing prior lawsuits and grievances and have permitted other inmates to mistreat him because he is gay and is mentally disabled. He contends that this conduct violates the ADA.

Title II of the ADA prohibits exclusion from or denial of the "benefits of the services, programs or activities of a public entity" or discrimination by a public entity on the basis of an individual's disability. *See* 42 U.S.C. § 12132. The Supreme Court has held that this provision applies to state prisoners. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998) ("[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates."). The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits

---

[1] The court notes that even if the court were to construe the Complaint as a petition for a writ of habeas corpus, the claim could not proceed. A prerequisite to habeas corpus relief is the exhaustion of all available state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. §2254(b)(1)(A). The plaintiff does not assert that he presented his good time credit claim in a state habeas petition. Thus, the possibility that the plaintiff may still obtain state review of his claim precludes immediate federal review.

one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).” 42 U.S.C. § 12102(1)(A)-(C).[2]

The State of Connecticut and the Connecticut Department of Correction are public entities within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) (defining public entity to include any state or local government); *Yeskey*, 524 U.S. at 209-10 (“State prisons fall squarely within [Title II's] statutory definition of ‘public entity,’ which includes ‘any department, agency . . ., or other instrumentality of a State . . . or local government.”) (quoting 42 U.S.C. § 12131(1)(B)).

In addition, the Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003). Title II of the ADA, however, does not “provide[] for individual capacity suits against state officials.” *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

Although the plaintiff alleges that he suffers from a disability due to his mental health

---

[2] Paragraph (3) of 42 U.S.C. 12102 provides in pertinent part:

> (A) An individual meets the requirement of “being regarded as having such an impairment” if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

conditions and diabetes, he has not stated a claim against the defendants for a violation of his rights under the ADA. The plaintiff alleges that the defendants refused to place him in protective custody in retaliation for his filing of grievances and past lawsuits. The plaintiff's general allegations that the defendants have discriminated against him because of his mental illness or diabetes condition are conclusory and unsupported by any facts. The plaintiff has not plausibly alleged that the defendants deprived him of access to a service, program or activity because of his mental health or medical conditions. Accordingly, the ADA claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### E.   Claims for Money Damages in Official Capacities

The plaintiff seeks monetary damages from defendants Dzurenda, Semple, Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick, Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their official and individual capacities and unspecified injunctive and declaratory relief from these defendants in their official capacities. The claims against the defendants in their official capacities for money damages are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the claims for monetary damages against defendants Dzurenda, Semple, Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick, Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their official capacities are dismissed pursuant to 28 U.S.C. §

1915A(b)(2).

After reviewing the Complaint, the court concludes that the plaintiff has plausibly alleged that the defendants violated his right to safety and protection from harm by other inmates as guaranteed by the Eighth Amendment and his right to be free from retaliation for exercising his First Amendment rights. In addition, the plaintiff has plausibly alleged that the defendants' conduct constituted negligenct and intentional infliction of emotional distress as defined by state law. The case will proceed against the defendants in their individual capacities and official capacities. The motion to expedite review of the Complaint is denied.

**II.     Motion for Appointment of Counsel [Doc. No. 6]**

The plaintiff is seeking an appointment of *pro bono* counsel in this action. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g., Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F. 2d 170, 172 (2d Cir. 1989). The Second Circuit has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).

The plaintiff states that he has a conflict of interest with certain attorneys at the Inmates' Legal Assistance Program. The court notes, however, that the plaintiff provided an exhibit to his Complaint showing that an attorney from the Inmates' Legal Assistance Program assisted him with a matter in November 2012. *See* Compl., Exs. 1 & 2. The plaintiff did not attach any letters from attorneys at the Inmates' Legal Assistance Program indicating that they could not or would not assist him with this action. The plaintiff also generally asserts that he attempted to find *pro bono* counsel at some point, but the attorneys that he contacted declined to assist him.

It is not clear that these attempts were made recently.

These undocumented attempts are insufficient to show that the plaintiff is unable to find an attorney willing to assist him with this action. The possibility that the plaintiff may be able to secure legal assistance or representation independently precludes appointment of counsel by the court at this time. The motion for appointment of counsel is denied without prejudice.

**III.   Motion for Protective Custody [Doc. No. 7]**

The plaintiff claims that inmates who are members of certain gangs at Osborn have threatened to harm him. He also alleges that the defendants have denied his requests for placement in protective custody. He asks the court to order the Department of Correction to place him in protective custody until his discharge in March 2016.

The Second Circuit has held that an inmate's requests for injunctive and declaratory relief against correctional staff or conditions of confinement at a particular correctional institution become moot when the inmate is discharged or transferred to a different correctional institution. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976). *See also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. *See, e.g., McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement).

The plaintiff's motion includes allegations regarding conditions at Osborn. The plaintiff, however, is no longer confined at Osborn. The plaintiff makes no complaints about conditions at Corrigan-Radgowski, where he is currently housed. Because the relief sought by the plaintiff is

no longer needed, the request for injunctive relief is denied.

## ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1) All Fifth, Sixth and Fourteenth Amendment claims and the ADA claims against all defendants and the prison transfer claims against defendants Semple and Lewis are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The claims against defendants Dzurenda, Semple, Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick, Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm for monetary damages in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment claims of failure to protect and deliberate indifference to safety, the First Amendment retaliation claims and the state law claims of negligence and intentional infliction of emotional distress shall proceed against defendants Dzurenda, Semple, Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick, Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their individual capacities and official capacities to the extent that the plaintiff seeks declaratory and injunctive relief.

The Motion to Expedite **[Doc. No. 9]** review of the Complaint is **DENIED**. The Motion for Appointment of Counsel **[Doc. No. 6]** is **DENIED** without prejudice. The Motion for Protective Custody **[Doc. No. 7]** is **DENIED**.

(2) Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the Complaint and this Order on the defendants Dzurenda, Semple, Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick,

Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one (21) business days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for each of the following defendants: Former Commissioner James E. Dzurenda, Deputy Commissioner Scott S. Semple, District Administrator Angel Quiros, Director of Offender Classification Karl Lewis, Wardens Carol Chapdelaine, Edward Maldonado and Christine M. Whidden, Deputy Wardens Gary Wright and Sandra Barone, Captains McCormick and K. Godding, Unit Managers Manning and Jean Ott, Lieutenant Lizon and Correctional Officers Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in his or her individual capacity and mail waiver of service of process request packets to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all waiver requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     The Pro Se Prisoner Litigation Office shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(5)     Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this order. If a defendant chooses to file an answer, he or she shall admit or deny the allegations and respond to the cognizable claims recited

above. He or she may also include any and all additional defenses permitted by the Federal Rules.

(6)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

(7)  All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8)  Pursuant to Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion may be granted absent objection for good cause shown.

SO ORDERED at Bridgeport, Connecticut this 21st day of November 2014.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge