**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LLOYD GEORGE MORGAN, JR.,
     Plaintiff,

    v.                                  CASE NO. 3:14-cv-966 (VAB)

COMMISSIONER DZURENDA, ET AL.,
     Defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

    Plaintiff, Lloyd George Morgan, Jr., is currently confined at the Corrigan-Radgowski

Correctional Institution in Uncasville, Connecticut.  He brings this civil rights action *pro se*

pursuant to 28 U.S.C. § 1915 against Commissioner James E. Dzurenda, Warden/Deputy

Commissioner Scott S. Semple, District Administrator Angel Quiros, Director of Offender

Classification Karl Lewis, Wardens Carol Chapdelaine, Edward Maldonado, and Christine M.

Whidden, Deputy Wardens Gary Wright and Sandra Barone, Captains McCormick and K.

Godding, Unit Managers Manning and Jean Ott, Lieutenant Lizon, and Correctional Officers

Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper, and Ulm.

    Pending before the Court is the defendants' motion to dismiss.  For the reasons set forth

below, the motion is **GRANTED** in part and **DENIED** in part, as follows:

    (1)   the motion to dismiss is **GRANTED** as to the January 2014 failure to protect claim
against Correctional Officers Gonzalez, Torres, Ulm, Leiper, and Clayton, Lieutenant
Lizon, Deputy Wardens Wright and Barone, Wardens Maldonado and Whidden, Unit
Managers Manning and Ott, Warden/Deputy Commissioner Semple, Commissioner
Dzurenda, Director of Offender Classification Lewis, and District Administrator Quiros;

    (2)   the motion to dismiss is **GRANTED** as to the general claims of retaliation against
Lieutenant Lizon, Administrator Quiros, Deputy Wardens Wright and Barone, Director
Lewis, Warden/Deputy Commissioner Semple, and Commissioner Dzurenda;

    (3)   the motion to dismiss is **GRANTED** as to the state law negligence claims against

all defendants in their individual and official capacities;

(4)    the motion to dismiss is **DENIED** as to the January 2014 failure to protect claim against Captain Godding and McCormick, Warden Chapdelaine, and Correctional Officers Lindsey and Maldonado;

(5)    the motion to dismiss is **GRANTED** as to the request for declaratory relief;

(6)    the motion to dismiss is **DENIED** as to the claim that Correctional Officers Gonzalez, Torres, Ulm, Leiper, and Clayton were deliberately indifferent to the plaintiff's safety when they called him a snitch in front of other inmates;

(7)    the motion to dismiss is **DENIED** as to the claim that Lieutenant Lizon, Deputy Wardens Wright and Barone, Warden Maldonado, Unit Managers Manning and Ott, Commissioner Dzurenda, Warden/Deputy Commissioner Semple, Director Lewis, and Administrator Quiros failed to take any action to protect the plaintiff from potential harm as a result of the conduct of defendant correctional officers Gonzalez, Torres, Ulm, Leiper, and Clayton;

(8)    the motion to dismiss is **DENIED** as to the specific claims of retaliation against Wardens Whidden and Maldonado;

(9)    the motion to dismiss is **DENIED** as to the requests for punitive and compensatory damages;

(10)  the motion to dismiss is **DENIED** on the ground of qualified immunity and on the ground of lack of personal involvement; and

(11)  the request for injunctive relief is **DISMISSED** *sua sponte* as barred by the Eleventh Amendment.

## I.   <u>Procedural History</u>

On November 21, 2014, the Court dismissed the Fifth, Sixth, and Fourteenth Amendment claims and the ADA claims against all defendants and the prison transfer claims against Warden/Deputy Commissioner Semple and Director of Offender Classification Lewis pursuant to 28 U.S.C. § 1915A(b)(1).  The Court also dismissed the claims against all defendants for monetary damages in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2).  The Court concluded that the Eighth Amendment claims of failure to protect and deliberate indifference to safety, the First Amendment retaliation claims and the state law claims of negligence and intentional infliction of emotional distress would proceed against defendants Dzurenda, Semple,

Quiros, Lewis, Chapdelaine, Warden Maldonado, Whidden, Wright, Barone, McCormick, Godding, Manning, Ott, Lizon, Officer Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their individual capacities and official capacities, to the extent that the plaintiff seeks declaratory and injunctive relief.

On February 17, 2015, the defendants brought this motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II.    **Factual Allegations**

The following relevant facts are alleged by the plaintiff, Mr. Morgan.  For purposes of evaluating a motion to dismiss, the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In August 2012, Mr. Morgan was incarcerated at Garner Correctional Institution ("Garner").  In mid-August 2012, he sent a letter to Commissioners Arnone and Dzurenda asking that he not be transferred to the Osborn Correctional Institution ("Osborn") because he had been assaulted at Osborn on two occasions in the late 1980s and early 1990s.  In July 2013, Warden Semple and Director of Population Management Lewis issued an order that Mr. Morgan be transferred to Carl Robinson Correctional Institution ("Carl Robinson").

During his confinement at Carl Robinson from July to November 2013, Mr. Morgan complained to Warden Whidden about other inmates at Carl Robinson who were gang members and who had threatened to harm him.  He requested that he be placed in protective custody.  Warden Whidden allegedly denied the plaintiff's requests to be placed in protective custody in retaliation for prior lawsuits and grievances filed by the plaintiff against her.  District

Administrator Quiros allegedly upheld Warden Whidden's decisions to deny the requests for plaintiff's placement in protective custody.

In October 2013, in response to a written letter from Mr. Morgan claiming that he feared for his safety, a lieutenant placed the plaintiff under observation in a restrictive housing cell. On November 8, 2013, defendants Whidden and Quiros transferred the plaintiff to Osborn, despite their knowledge of his having been the victim of several assaults at Osborn in the late 1980s and early 1990s.

Upon his admission to Osborn, prison officials placed Mr. Morgan in a unit known for housing gang members. From November 14, 2013 to January 4, 2014, he complained to Unit Manager Godding, Warden Chapdelaine, and Captain McCormick verbally and in writing about harassment and threats issued by gang members at Osborn. Mr. Morgan specifically complained about an inmate named Rodriguez, who lived in his housing unit and was a member of the Los Solidos gang.

On January 5, 2014, he informed Correctional Officers Lindsey and Maldonado that Inmate Rodriguez, who was a member of the Los Solidos gang, had threatened to harm him and that he feared for his safety. Later that day, Inmate Rodriguez assaulted Mr. Morgan in the shower. Prison officials investigated the incident and issued Inmate Rodriguez a disciplinary report for assault.

Later in January 2014, the plaintiff requested that he be placed in protective custody. A correctional counselor recommended that the plaintiff's request be granted. In February 2014, Warden Maldonado, District Administrator Quiros, Director of Population Management Lewis, Deputy Commissioner Semple, Commissioner Dzurenda, and Deputy Warden Barone denied the plaintiff's request to be placed in protective custody.

Correctional Officers Gonzalez, Torres, Ulm, Leiper, and Clayton and Lieutenant Lizon allegedly called plaintiff a snitch in front of other inmates.  Commissioner Dzurenda, Warden/Deputy Commissioner Semple, District Administrator Quiros, Director of Offender Classification Lewis, Warden Maldonado, Deputy Wardens Wright and Barone, Unit Managers Manning and Ott, and Lieutenant Lizon failed to take any action to protect him from potential harm as a result of the conduct of defendants Gonzalez, Torres, Ulm, Leiper, and Clayton.

In May 2014, Mr. Morgan sent multiple requests to Deputy Warden Wright seeking an investigation into gang activity and his placement in the special needs unit, but Deputy Warden Wright determined that he did not meet the criteria for special needs placement and ignored the plaintiff's allegations that he feared for his safety, due to threats by gang member inmates at Osborn.

## III.   <u>Standard of Review</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving, by a preponderance of evidence, that the Court has subject matter jurisdiction.  *See id.*

In reviewing a motion to dismiss under Rule 12(b)(1), "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000)).  When the existence of subject matter jurisdiction is challenged, the Court may properly consider evidence outside of the pleadings submitted on this issue to determine whether subject matter jurisdiction exists.  *See State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  In its review of the complaint, the Court applies a "plausibility standard,'" which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that the Court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Courts should recognize that the plausibility standard "does not impose a probability requirement at the pleading stage, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting plaintiff's claim for relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).  Furthermore, even under this standard, the Court liberally construes a *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In ruling on a motion to dismiss under Rule 12(b)(6), the Court may only consider the facts alleged in the complaint, documents attached as exhibits to the complaint or incorporated by reference in the complaint, and "matters of which judicial notice may be taken."  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## IV.   <u>Discussion</u>

Defendants assert seven arguments in support of their motion to dismiss.  They argue

that: (1) there are insufficient facts to support a failure to protect claim/deliberate indifference to safety claim against any of the defendants; (2) the facts fail to state a claim for retaliation against any defendant; (3) there are no facts to show the personal involvement of supervisory defendants Dzurenda, Semple, Quiros, Wright, Barone, Whidden, Lewis, Chapdelaine, and Warden Maldonado in the alleged constitutional violations; (4) the negligence claims are barred by statutory and sovereign immunity; (5) the Court lacks subject matter jurisdiction over the requests for injunctive and declaratory relief as well as punitive damages; (6) the request for compensatory damages is barred by 42 U.S.C. § 1997e(e); and (7) they are entitled to qualified immunity.

### A.    **Failure to Protect Claim**

The Complaint includes two failure to protect claims.  Plaintiff alleges that during his confinement at Osborn from November 14, 2013 to January 4, 2014, he complained to Unit Manager Godding, Warden Chapdelaine, and Captain McCormick verbally and in writing about harassment and threats issued by inmates who were members of the Bloods and Los Solidos gangs at Osborn.  In particular, he mentioned an Inmate Rodriguez, who lived in his housing unit and had threatened to hurt him.  On January 5, 2014, the plaintiff informed Correctional Officers Lindsey and Maldonado that an inmate in his housing unit, who was a Los Solidos gang member, had threatened to harm him and he feared for his safety.  Later that day, the inmate that the plaintiff had complained about assaulted him in the shower.

Plaintiff also alleges that during his confinement at Osborn from January 2014 to May 2014, Correctional Officers Gonzalez, Torres, Ulm, Leiper, and Clayton called him a snitch in front of other inmates.  Mr. Morgan claims that he made defendants Lizon, Wright, Warden Maldonado, Manning, Barone, Dzurenda, Semple, Lewis, and Quiros aware of the conduct of

defendants Gonzalez, Torres, Ulm, and Lieper, but they failed to grant his requests for protective custody or special needs management or take any other action to protect him from potential harm.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  Thus, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" and will give rise to a failure to protect claim. *Farmer*, 511 U.S. at 828 (internal quotation marks and citations omitted).

### 1.   January 2014 Assault

Counsel for the defendants argues that the plaintiff has failed to allege that he made defendants Godding, Chapdelaine, McCormick, Lindsey, and Correctional Officer Maldonado aware of the possibility that he might be harmed by Inmate Rodriguez prior to the assault.  The plaintiff has alleged plausibly that, during the month prior to the assault by Inmate Rodriguez at Osborn, he made defendants Godding, Chapdelaine, and McCormick aware that he might be harmed by an inmate named Gabriel Rodriguez, who was a member of the Los Solidos gang, and on the day of the assault informed defendants Lindsey and Correctional Officer Maldonado that he feared that Inmate Rodriguez might hurt him.  The plaintiff claims that none of these defendants took any action to protect him from the assault by Inmate Rodriguez despite his attempts to warn them that he was in danger.  Thus, the motion to dismiss is denied as to defendants Godding, Chapdelaine, McCormick, Lindsey, and Correctional Officer Maldonado regarding the claim that they failed to protect him from assault by Inmate Rodriguez.

Defendants also argue that the plaintiff has failed to allege sufficiently that defendants

Gonzalez, Torres, Lizon, Ulm, Leiper, Clayton, Wright, Warden Maldonado, Whidden,

Manning, Barone, Ott, Dzurenda, Semple, Lewis, and Quiros were involved in or aware of the

potential harm to the plaintiff from Inmate Rodriguez prior to the assault in the shower at

Osborn.  There are no allegations that defendants Gonzalez, Torres, Lizon, Ulm, Leiper, Clayton,

Wright, Warden Maldonado, Whidden, Manning, Barone, Ott, Dzurenda, Semple, Lewis, and

Quiros were aware of the potential harm to the plaintiff in January 2014 and failed to take

measures to protect him from that harm.

Although the plaintiff claims that he sent letters to defendants Dzurenda and Semple in

2012 regarding prior incidents involving assaults on him by other inmates in 1996 at Osborn,

these letters would not have put them on notice that the plaintiff might be in danger of assault at

Osborn over a year later.  *See Coronado v. Goord*, No. 99-cv-1674, 2000 WL 1372834, at *5,

2000 U.S. Dist. LEXIS 13876, at *14 (S.D.N.Y. Sept. 25, 2000) (holding knowledge of attacks

on prisoner approximately ten years earlier insufficient to prove defendants knew he was at risk

because "[t]he significant amount of time that has passed since these prior attack lessens the

imminence of the threat of their being repeated").  The plaintiff has failed to state a claim of

failure to protect against defendants Gonzalez, Torres, Lizon, Ulm, Leiper, Clayton, Wright,

Warden Maldonado, Whidden, Manning, Barone, Ott, Dzurenda, Semple, Lewis, or Quiros

regarding the assault by Inmate Rodriguez on January 5, 2014.  Accordingly, the motion to

dismiss is granted as to January 2014 failure to protect claim against defendants Gonzalez,

Torres, Lizon, Ulm, Leiper, Clayton, Wright, Warden Maldonado, Whidden, Manning, Barone,

Ott, Dzurenda, Semple, Lewis, and Quiros.

### 2.      Labeling the Plaintiff a Snitch

Counsel for the defendants contends that the plaintiff has not alleged that any of the

defendants called him a snitch in front of Inmate Rodriguez prior to the assault on January 5, 2014. This argument is misplaced. The claim that defendants Gonzalez, Torres, Ulm, Leiper and Clayton called him a snitch on multiple occasions in front of other inmates is a separate claim from the alleged failure to protect claim involving the assault by Inmate Rodriguez on January 5, 2014.

Defendants acknowledge that an allegation that a correctional officer called an inmate a snitch in front of other inmates may pose a threat to that inmate's health and safety. Plaintiff has alleged with sufficient specificity that defendants Gonzalez, Torres, Ulm, Leiper, and Clayton called him a snitch in front of other inmates at various times between January and May 2014. Plaintiff also has alleged that he informed defendants Lizon, Wright, Warden Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros of this conduct and sought to be placed in protective custody or on special management status, but these defendants denied the requests and ignored his concerns for his safety. The plaintiff has stated plausible claims that other inmates had called him a snitch in front of other inmates and that defendants failed to take any action to protect him from potential harm. Thus, the motion to dismiss is denied as to the claims that defendants Gonzalez, Torres, Ulm, Leiper, and Clayton were deliberately indifferent to his safety when they called him a snitch in front of other inmates and defendants Lizon, Wright, Warden Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros failed to take any action to protect him from potential harm as a result of the conduct of defendants Gonzalez, Torres, Ulm, Leiper, and Clayton.

**B.   Retaliation Claim**

Plaintiff claims that defendants Whidden and Quiros denied his request to be placed in protective custody at Carl Robinson and then transferred him to Osborn in retaliation for

grievances and lawsuits filed by him against defendant Whidden.  Plaintiff also alleges that defendant Warden Maldonado denied his request to be placed in protective custody after the assault by Inmate Rodriguez because of past lawsuits filed by him against defendant Warden Maldonado.

Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).  To state a retaliation claim, the plaintiff must show that his conduct was protected by the Constitution or federal law and that this protected conduct was a "substantial or motivating factor" in the alleged retaliatory action by prison officials.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  "'Only retaliatory action that would deter a similarly situated individual or ordinary firmness from exercising his or her constitutional rights constitutes adverse action for a claim of retaliation.'"  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001)).

Plaintiff includes specific allegations that defendant Whidden verbally informed him that she thought he was difficult and that she would deny his request for protective custody because he had filed grievances and complaints against her.  Plaintiff also asserted that defendant Warden Maldonado had a personal vendetta against him and that he informed him that he would deny his request for protective custody because plaintiff had filed grievances against him and had sued him in the past.  Plaintiff's specific allegations that defendant Whidden denied his request to be placed in protective custody at Carl Robinson and transferred him to Osborn because of prior grievances and lawsuits filed by him against defendant Whidden, as well as the specific claim that defendant Warden Maldonado denied his request to be placed in protective custody at Osborn because of prior grievances or lawsuits filed by him against defendant Warden

Maldonado, state plausible claims of retaliation.  The general claims that defendant Quiros agreed with the recommendation of defendant Whidden that the plaintiff's request for protective custody be denied and that he be transferred to Osborn and that he agreed with the recommendation of defendant Maldonado that plaintiff's request for protective custody be denied are conclusory and do not state claims for retaliation.

Plaintiff also alleges that the refusal of defendants Lizon, Wright, Barone, Lewis, Semple, Quiros, and Dzurenda to take action in response to his complaints about being called a snitch as well as the denial of his requests to be placed in protective custody constituted retaliation.  These allegations are conclusory and are not supported by any facts to suggest that the conduct of these defendants was taken in retaliation for the exercise of the plaintiff's constitutional rights.  Thus, the motion to dismiss is granted as to the general claims of retaliation against defendants Quiros, Lizon, Wright, Barone, Lewis, Semple, and Dzurenda and denied as to the specific claims of retaliation against defendants Whidden and Warden Maldonado.

C.    **Personal Involvement**

Defendants contend that the plaintiff has failed to allege the personal involvement of the supervisory defendants in any constitutional violations.  To recover money damages under section 1983, plaintiff must show that these defendants were personally involved in the constitutional violations.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates.  *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Plaintiff may show personal involvement through evidence of one or more of the following: (1) that the defendant actually and directly participated in the alleged unconstitutional

acts; (2) that the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) that the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) that the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) that the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon*, 58 F.3d at 873.  In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, the Supreme Court found that a supervisor can be held liable only "through the official's own individual actions."  556 U.S. 662, 676 (2009).  This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*.  *See Rispardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*."); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of *Iqbal* on the personal involvement requirements set forth in *Colon*).  Because it is unclear as to whether *Iqbal* overrules or limits *Colon*, the Court will continue to apply the categories for supervisory liability set forth by the Second Circuit.

Defendants first contend that plaintiff has failed to allege that they have violated his

13

constitutional rights.  Without discussion, defendants then argue that, even if the plaintiff had alleged sufficient facts to state a claim that they had violated his constitutional rights, none of the supervisory defendants, namely Commissioner James E. Dzurenda, Warden/Deputy Commissioner Scott S. Semple, District Administrator Angel Quiros, Director of Offender Classification Karl Lewis, Wardens Carol Chapdelaine, Edward Maldonado, and Christine M. Whidden, and Deputy Wardens Gary Wright and Sandra Barone, were directly involved in or had actual knowledge of the constitutional violations of the plaintiff's rights.

The Court has addressed the plaintiff's allegations in prior sections of this ruling and has found that the plaintiff has stated plausible claims that defendants Godding, Chapdelaine, McCormick, Lindsey, and Correctional Officer Maldonado failed to protect him from assault by Inmate Rodriguez, that defendants Gonzalez, Torres, Ulm, Leiper, and Clayton were deliberately indifferent to his safety when they called him a snitch in front of other inmates, that defendants Lizon, Wright, Warden Maldonado, Manning, Barone, Dzurenda, Semple, Lewis, and Quiros failed to take any action to protect him from potential harm as a result of the conduct of defendants Gonzalez, Torres, Ulm, Leiper, and Clayton, and that defendants Whidden and Warden Maldonado retaliated against the plaintiff for filing grievances and complaints against them.  Thus, the plaintiff has sufficiently alleged the involvement of the above defendants in these claims.  The motion to dismiss is denied on the ground of lack of personal involvement in the constitutional violations of the plaintiff's rights.

### D.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  Defendants have the burden of proving the affirmative defense of qualified immunity.  *See Vincent v. Yelich*, 718 F.3d

14

157, 166 (2d Cir. 2013).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v, Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011) (citation omitted). The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances surrounding the case to be decided. *See Pearson*, 555 U.S. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at ___, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2094 (2012). Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640).

Without discussion, defendants simply contend that in light of the state of the law, it was impossible for them to have known that they violated clearly established rights of the plaintiff

15

when they transferred him to Osborn and denied his request for protective custody.  To the extent

that defendants are addressing the retaliation claims raised by the plaintiff, it was clearly

established at least as early as 1988 that subjecting a prisoner to adverse action in retaliation for

filing grievances constituted unconstitutional conduct.  *See Franco v. Kelly*, 854 F.2d 584, 589-

90 (2d Cir. 1988).  If defendants denied the plaintiff's requests for protective custody status and

transferred him to Osborn in retaliation for his filing of grievances and lawsuits against them, it

would not have been reasonable for them to believe that their conduct did not violate the

plaintiff's rights.

Defendants have not met their burden on either prong of the qualified immunity standard.

Accordingly, the motion to dismiss is denied on the ground that the defendants are entitled to

qualified immunity as to plaintiff's claims.

### E.    Negligence Claim

Plaintiff asserts state law claims of negligence and intentional infliction of emotional

distress.  Defendants contend that the claim of negligence, only,[1] is barred by the doctrines of

statutory and sovereign immunity.  Plaintiff does not address this argument.

Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally

liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or

her duties or within the scope of his or her employment."  Thus, state employees are not

"personally liable for their negligent actions performed within the scope of their employment."

*Miller v. Egan*, 265 Conn. 301, 319 (2003).  Furthermore, "[a]ny person having a complaint for

such damage or injury" must "present . . . [the] claim against the state" to the State Claims

Commissioner who may authorize suit against the state or state official.  Conn. Gen. Stat. §§ 4-160, 4-165(a).  When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted."  Conn. Gen. Stat. § 4-160(c).

Plaintiff has alleged that some of the defendants acted negligently in failing to protect him from assault by another inmate.  Plaintiff has not asserted that he filed a claim with the State Claims Commissioner or that he received the required authorization to file suit against the State and its officials.  Accordingly, the negligence claims against the defendants in their individual capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-165.  The motion to dismiss is granted on this ground.

"The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty."  *Hultman v. Blumenthal*, 67 Conn. App. 613, 620 (2002).  This immunity is applicable to both lawsuits against a state as well as to lawsuits against a state official in his or her official capacity.  *See Miller*, 265 Conn. at 313 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citation omitted).  There is no allegation that the defendants in their official capacities waived their sovereign immunity to be sued as to any negligence claims.  Accordingly, the motion to dismiss the claims of negligence against the defendants in their official capacities is granted because those claims are barred by sovereign immunity.

### F.   Claims for Declaratory and Injunctive Relief

Defendants seek dismissal of plaintiff's requests for injunctive and declaratory relief on the ground that the court lacks subject matter jurisdiction over the requests.  Plaintiff does not

---

[1] The state law claim for intentional infliction of emotional distress thus remains.

seek specific injunctive relief, but simply states that he seeks an injunction against defendants in their official capacities.  Plaintiff also seeks declaratory relief in the form of a request that the Court find that defendants' conduct violated his constitutional rights.

Defendants argue that the request for declaratory relief should be dismissed because it is retrospective instead of prospective, and the Court agrees.  In addition, defendants contend that plaintiff's request for injunctive relief should be dismissed as moot because he is no longer incarcerated in any of the three facilities at which the alleged unconstitutional conditions occurred; however, the Court concludes that the request for injunctive relief is more appropriately dismissed, like the request for declaratory relief, on the ground that it is not prospective in nature.

In *Ex Parte Young*, the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law.  209 U.S. 123, 155-56 (1908).  This exception to Eleventh Amendment immunity does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief"); *In re Deposit Ins. Agency*, 482 F. 3d 612, 618 (2d Cir. 2007) (plaintiff may proceed against state officers in official capacities only if "complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective") (internal

quotation marks and citations omitted); *Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars retrospective relief in form of declaration that State of Connecticut violated federal law in the past).

Plaintiff's request for unspecified injunctive relief and request for a declaration that defendants violated his constitutional rights in the past cannot be properly characterized as "prospective" because plaintiff does not allege how such relief would remedy a future constitutional violation against him by defendants. Thus, plaintiff's requests for declaratory and injunctive relief do not meet the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*. *See Thomas v. Connecticut Dep't of Correction*, No. 3:14-cv-714, 2015 WL 3970833, at *5, 2015 U.S. Dist. LEXIS 84543, at *13-14 (D. Conn. June 30, 2015) (granting motion to dismiss claim seeking "such further and equitable relief as the Court may deem appropriate" on ground that request did not "properly invoke the *Ex Parte Young* exception to Eleventh Amendment immunity"); *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220-21 (N.D.N.Y. 2014) (dismissing requests for relief seeking an "injunction precluding any unlawful conduct alleged within this complaint at any time in the future and a declaration that defendants have violated federal law" because they "cannot be properly characterized as prospective" requests for relief) (internal quotation marks omitted).

Because neither the injunctive relief nor the declaratory relief sought in the complaint is prospective in nature, those requests for relief are barred by the Eleventh Amendment and must be dismissed. The motion to dismiss is granted as to the request for declaratory relief on the ground that it is barred by the Eleventh Amendment. The request for injunctive relief is dismissed *sua sponte* on the ground that it is barred by the Eleventh Amendment. *See Atlantic*

*Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (Eleventh Amendment may be raised *sua sponte* because it affects the court's subject matter jurisdiction), *cert. denied*, 510 U.S. 1043 (1994).

### G.   Claim for Punitive Damages

Defendants first argue that 18 U.S.C. § 3626(a)(1), which provides that prospective relief in civil actions concerning prison conditions extend no further than necessary to correct the violation of the Federal right of the particular plaintiffs, precludes any award for punitive damages.  In support of this argument, defendants rely on a single case from the United States District Court for the Western District of Pennsylvania.  *See Margo v. Bedford County*, No. 3:04-cv-147, 2008 WL 857507, 2008 U.S. Dist. LEXIS 25625 (W.D. Pa. Mar. 31, 2008).  The Court declines to follow this decision, and agrees with later case law that 18 U.S.C. § 3626(g)(7), which defines the term "prospective relief" as "all relief other than compensatory monetary damages," did not intend to preclude an award of punitive damages in all prisoner litigation.  *See Douglas v. Byunghak Jin*, No. 11-cv-350, 2014 WL 1117934, at *4-5, 2014 U.S. Dist. LEXIS 36514, at *9 (W.D. Pa. Mar. 20, 2014) (rejecting *Margo*'s holding in part because its "interpretation of the statutory definition of 'prospective relief' fails to consider the entire text and purpose of section 3626").

Defendants further argue that the plaintiff is not entitled to punitive damages because his allegations of extortion, blackmail, and conspiracy are not supported by any facts.  Defendants refer to their conduct during an investigation of a corrupt officer.  Defendants' argument is misplaced given that the plaintiff has not alleged that they engaged in an investigation of a corrupt officer.  Plaintiff has sufficiently alleged that the defendants' conduct was either

motivated by evil intent or involved a reckless disregard for his federally protected rights.  Thus,

plaintiff has asserted sufficient facts to show that punitive damages may be justified if he

prevails in this action.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages are

available in a section 1983 action "when the defendant's conduct is shown to be motivated by

evil motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others").  The motion to dismiss is denied as to the request for punitive

damages.

### H.   <u>Compensatory Damages</u>

Defendants argue that plaintiff's claims for compensatory damages are barred by 42

U.S.C. § 1997e(e), which states that "no Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury."  The Second Circuit has concluded

that section 1997e(e) "applies to claims in which a plaintiff alleges constitutional violations so

that the plaintiff cannot recover damages for mental or emotional injury for a constitutional

violation in the absence of a showing of actual physical injury."  *Thompson v. Carter*, 284 F.3d

411, 417 (2d Cir. 2002).  Thus, plaintiff may not recover compensatory damages for emotional

injuries absent a demonstration of physical injury.

Plaintiff alleged that Inmate Rodriguez hit him in the head, face, and body and choked

him.  Plaintiff claims that he suffered injuries to his head, face and neck and abrasions on his

face and neck.  In addition, a medical report attached to the complaint includes a description of

the plaintiff's injuries, including abrasions and swelling to his face and head and an abrasion on

his back.  See Compl., Ex. 16.  Thus, there are allegations that the plaintiff suffered some

physical injuries as a result of the assault.  Accordingly, the motion to dismiss is denied as to the claim for compensatory damages.

## IV.    **Conclusion**

The Motion to Dismiss [**Doc. No. 38**] is **GRANTED** as to (1) the January 2014 failure to protect claim against defendants Gonzalez, Torres, Lizon, Ulm, Leiper, Clayton, Wright, Warden Maldonado, Whidden, Manning, Barone, Ott, Dzurenda, Semple, Lewis, and Quiros, (2) the general claims of retaliation against defendants Quiros, Lizon, Wright, Barone, Lewis, Semple, and Dzurenda, (3) the state law negligence claims against all defendants in their individual and official capacities, and (4) the request for declaratory relief and **DENIED** as to (1) the January 2014 failure to protect claim against defendants Godding, Chapdelaine, McCormick, Lindsey, and Correctional Officer Maldonado, (2) the claim that defendants Gonzalez, Torres, Ulm, Leiper, and Clayton were deliberately indifferent to his safety when they called him a snitch in front of other inmates, (3) the claim that defendants Lizon, Wright, Warden Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros failed to take any action to protect him from potential harm as a result of the conduct of defendants Gonzalez, Torres, Ulm, Leiper and Clayton, (4) the specific claims of retaliation against defendants Whidden and Warden Maldonado, and (5) the requests for injunctive and declaratory relief and punitive and compensatory damages.  The Motion to Dismiss [**Doc. No. 38**] is also **DENIED** on the ground of qualified immunity and on the ground of lack of personal involvement.  The request for injunctive relief is **DISMISSED** *sua sponte* as barred by the Eleventh Amendment.

**SO ORDERED** this 29th day of September, 2015, at Bridgeport, Connecticut.


   /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE