UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LLOYD GEORGE MORGAN,<br>　　　Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Case No. 3:14-cv-966(VAB) |
| | : | |
| COMM'R JAMES E. DZURENDA, et al.,<br>　　　Defendants. | : | |
| | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Lloyd George Morgan, is currently incarcerated at Garner Correctional Institution, in Newtown, Connecticut ("Garner"). He initiated this action by filing a Complaint alleging various claims under 42 U.S.C. § 1983 ("Section 1983") and Title II of the Americans with Disabilities Act ("ADA"). His Complaint, ECF No.1, named twenty-one officials or officers employed by the State of Connecticut Department of Correction as Defendants.

In an Initial Review Order dated November 21, 2014, the Court dismissed Morgan's Section 1983 claims alleging violations of the Fifth, Sixth and Fourteenth Amendment, as well as the ADA claims against all Defendants and the prison transfer claims against Defendants Semple and Lewis under 28 U.S.C. § 1915A(b)(1). *See* Initial Review Order at 12, ECF No. 11. The Court also dismissed the claims for monetary damages against all Defendants in their official capacities under 28 U.S.C. § 1915A(b)(2). *See id.* The Court concluded that the Eighth Amendment claims of failure to protect and deliberate indifference to safety, the First Amendment retaliation claims and the state law claims of negligence and intentional infliction of emotional distress would proceed against Defendants Commissioner James E. Dzurenda; Deputy Commissioner Scott S. Semple; District Administrator Angel Quiros; Director of Offender

Classification Karl Lewis; Wardens Carol Chapdelaine, Edward Maldonado and Christine M. Whidden; Deputy Wardens Gary Wright and Sandra Barone; Captains McCormick and K. Godding; Unit Managers Manning and Jean Ott; Lieutenant Lizon; and Correctional Officers Maldonado, Lindsey, Clayton, Torres, Gonzalez, Leiper and Ulm in their individual capacities, and in their official capacities, but only to the extent that Mr. Morgan sought declaratory and injunctive relief.  *See id.*

On September 29, 2015, the Court denied in part and granted in part the Defendants' motion to dismiss.  ECF No. 53.  The following claims remain pending against the Defendants in their individual capacities: (1) the January 2014 failure to protect claim against Defendants Godding, Chapdelaine, McCormick, Lindsey and Maldonado; (2) the claim that Defendants Gonzalez, Torres, Ulm, Leiper and Clayton were deliberately indifferent to Mr. Morgan's safety when they called him a snitch in front of other inmates; (3) the claim that Defendants Lizon, Wright, Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis and Quiros were deliberately indifferent to Mr. Morgan's safety because they failed to take any action to protect Mr. Morgan from potential harm when they learned of the conduct of defendants Gonzalez, Torres, Ulm, Leiper and Clayton; (4) the specific claims of retaliation against Defendants Whidden and Warden Maldonado; and (5) the state law claim for intentional infliction of emotional distress.  *See* Motion to Dismiss Order at 22, ECF No. 53.

Pending before the Court is Defendants' motion for summary judgment as to all of Morgan's claims.  ECF No. 82.  For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.  Specifically, the motion is **GRANTED** as to the Eighth Amendment deliberate indifference to safety claims against Gonzalez, Torres, Ulm, Leiper, Clayton, Lizon,

Wright, Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros, in relation to comments from Gonzalez, Torres, Ulm, Leiper, and Clayton indicating that Morgan was a snitch in front of other inmates; the Eighth Amendment failure to protect claim against McCormick centering on the assault by Rodriguez on Morgan; and the First Amendment retaliation claims against Whidden and Maldonado.  The motion is **DENIED** as to the Eighth Amendment failure to protect claim against Chapdelaine, Godding, Maldonado and Lindsey arising from the assault by Rodriguez on Morgan and as to the intentional infliction of emotional distress claims.

## I.     Standard of Review

The Court will grant a motion for summary judgment if it determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine dispute of material fact exists.  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamic Co.*, 158 F.3d 622, 626 (2d Cir. 1998). The substantive law governing the case identifies which facts are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Boubolis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On summary judgment, the Court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  When reviewing the record

on a motion for summary judgment, the Court must "assess the record in the light most favorable to the non-movant" and "draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Inferences drawn in favor of the nonmovant must, however, be supported by evidence, and the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment. *Liberty Lobby*, 477 U.S. at 252. Conclusory allegations, conjecture, and speculation are insufficient to create genuine issues of material fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (internal quotation marks omitted).

Where one party is proceeding *pro se*, the Court must read the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock*, 224 F.3d at 41.

## II. Factual Allegations[1]

In 2013, the Department of Correction ("DOC") housed Morgan at the Carl Robinson Correctional Institution ("Robinson"), until he was transferred to Osborn Correctional ("Osborn") from Robinson on November 8, 2013. Morgan Aff. ¶ 3, ECF No. 100-1; Maiga Aff.

---

[1] The relevant facts are taken from Defendants' Local Rule 56(a)1 Statement, ECF No. 82-4; and Exhibits attached to the Local Rule 56(a)1 Statement, ECF Nos. 82-4, 82-5, 82-6, 82-7, 82-9 through 82-15; and Mr. Morgan's Local Rule 56(a)2 Statement, ECF. No. 101; Affidavit, ECF No. 100-1; and Exhibits attached to the Complaint, ECF No. 1-1. The court notes that the Defendants initially submitted two Local Rule 56(a)1 Statements with their motion for summary judgment. *See* ECF No. 82-4; ECF No. 82-8. Defendants then filed a motion substituting another document for the second Local Rule 56(a)(1) statement for the one filed as ECF No. 82-8, indicating that it was filed in error. ECF No. 83. The Court therefore considers the Defendants' Local Rule 56(a)2 Statement filed as ECF No. 82-4 to be the operative one for purposes of this ruling.

¶ 24, ECF No. 82-5.  Before he was housed at Robinson in 2013, Morgan had been housed at Osborn.  Morgan Aff. ¶ 4.

### A.      November 8, 2013 Transfer

While housed at Robinson in 2013, Morgan testifies that he filed "numerous complaints regarding threats to my safety made by multiple inmates who were gang members."  Morgan Aff. ¶ 4.  Morgan also wrote to Whidden about these threats and the fear for his safety, and indicated that he had also "experienced threats to [his] person by gang members" while he was housed at Osborn before being housed at Robinson.  *Id.* ¶ 5.  Morgan therefore requested placement in protective custody and had a protective custody application completed and submitted.  *Id.* ¶ 6.

A correctional official conducted an investigation into Morgan's allegations in support of his request for protective custody.  During an interview with the investigator, Morgan identified three inmates who had threatened to harm him.  The investigator also interviewed one of the inmates who had allegedly threatened Morgan.

On November 4, 2013, the investigator recommended that the request for protective custody status for Morgan be denied because there was a lack of evidence to support a valid threat to Morgan's safety and because there was a reasonable housing alternative in general population.  The investigator noted that Morgan could not be managed in a dormitory setting, but recommended that Morgan be housed in a celled facility in a single cell in general population.

On November 5, 2013, Whidden concurred with the recommendations of the investigator and denied the request for protective custody.  She agreed that a transfer to another facility that did not have dormitory-style housing would be sufficient to meet the safety and other concerns

of Mr. Morgan.  Later that day, Quiros concurred with Whidden's recommendation.

On November 7, 2013, Lewis approved the recommendations of Whidden to deny Morgan's request to be placed in protective custody and to transfer Morgan to a celled facility. Lewis also ordered that formal separation profiles be established between Mr. Morgan and the three inmates who had threatened him.

On November 8, 2013, officials at Robinson transferred Morgan to Osborn Correctional Institution ("Osborn").  Inmate Gabriel Rodriguez was confined at Osborn in housing Unit B, the same unit as Morgan.  This was the first time that Rodriguez and Morgan had been confined together in the same facility under DOC custody.  Unit B had not been designated as a unit for gang members.

### B. Morgan's Complaints at Osborn

On November 13, 2013, Mr. Morgan completed and submitted an Inmate Request Form addressed to Godding.  On December 2, 2013, Mr. Morgan completed and submitted an Inmate Request Form addressed Chapdelaine.  On December 18, 2013, Mr. Morgan completed and submitted an Inmate Request Form addressed to McCormick.

At some point in 2009, McCormick began to work at Osborn.  On December 10, 2013, DOC re-assigned Captain McCormick to the District One Office.  His duties and responsibilities at Osborn ended when he left Osborn for the District One Office.  McCormick does not, therefore, remember receiving the Inmate Request Form dated December 18, 2013 that Morgan addressed to him.  McCormick was unaware of any problems between Morgan and Rodriguez and had no reason to believe that Morgan was in danger.

On January 3, 2014, DOC re-assigned Chapdelaine to become the Warden of

MacDougall-Walker Correctional Institution ("MacDougall").  Warden Chapdelaine's re-assignment to MacDougall terminated her responsibilities at Osborn.  She was no, therefore, aware of or involved in the incident that occurred on January 5, 2014 between Morgan and Rodriguez at Osborn.

On January 3, 2014, DOC assigned Maldonado to take over as Warden of Osborn.  Morgan did not express any concerns for his safety or problems with Rodriguez to Maldonado before the incident on January 5, 2014.

### C.  January 5, 2014 Incident with Rodriguez

On January 5, 2014, Morgan informed Lindsey and Maldonado that Rodriguez had threatened him and that he feared for his safety.  Morgan Aff. ¶ 22.  Lindsey and Maldonado did not take any action in response.  *Id.*

Hours later, Rodriguez assaulted Morgan in the B-block shower at Osborn, "beating [Morgan] about [his] head and choking [him]."  Morgan Aff. ¶ 23.  Morgan testifies that, during the assault, Rodriguez informed him that it was "for being a snitch and a homo."  *Id.* ¶ 25.  Morgan testifies that this assault resulted in bruises to his head, face, and sides of his body, as well as emotional distress.  *Id.* ¶ 24.

After the assault by Rodriguez, Morgan was placed in segregation, in the Restrictive Hoousing Unit from January 5, 2014 through sometime in February 2014.  Morgan Aff. ¶ 26.  On February 18, 2014, Lizon transferred Morgan from the restrictive housing unit to Cell 24 in Unit F in general population

Following the assault, Morgan again requested placement in protective custody.  Morgan Aff. ¶ 27.  Morgan testifies that Long submitted the protective custody package and that both

Long and Lizon recommended that it be approved.  Id.  On January 21, 2014, Long submitted the request for protective custody placement on Morgan's behalf.   On January 29, 2014, Morgan learned that Maldonado had denied his request to be placed on protective custody.  Morgan appealed the denial of the request.  On March 17, 2014, Semple denied the appeal.

After the assault, Rodriguez was also placed in the restrictive housing unit.  He was issued a disciplinary report for assault.  Rodriguez pleaded guilty to the disciplinary charge.  Since the January 5, 2014 incident, Morgan and Rodriguez have remained separated.  Maiga Aff. ¶ 42.  Rodriguez was moved from Osborn on February 2014.  *Id.* ¶ 49.  Morgan and Rodriguez have not been housed at the same facility since Rodriguez's February 2014 move.  Id.

## III.    Discussion

Defendants assert three arguments in support of their motion for summary judgment on all of Morgan's claims.  Defendants argue that that: (1) the facts do not, as a matter of law, support Morgan's failure to protect, deliberate indifference to safety, or retaliation claims; (2) the facts do not demonstrate the personal involvement of Dzurenda, Semple, Quiros, Lewis, Maldonado, Wright, Barone, Manning, Ott, and Lizon in any deliberate indifference to Morgan's safety; and (3) that Defendants are entitled to qualified immunity.  See Def.'s Br. at 5-26, ECF No. 82-1.

### A.    Eight Amendment Claims

Morgan frames some of his Eighth Amendment claims as failure to protect clams and the others as deliberate indifference to safety claims.  With respect to both types of claim, the threats to his safety that Morgan identified and that he alleges the Defendants failed to protect him from all came from other inmates.  As discussed below, the standard for these claims is the same.

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. Amend. VIII.  Under the Eighth Amendment, prison conditions must, therefore, provide inmates with "the minimal civilized measures of life's necessities."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Prisons must provide inmates with their "basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety," and a failure to do so violates the Eighth Amendment.  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).  Accordingly, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("The Eighth Amendment . . . imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners." (internal quotation marks omitted)).

To establish an Eighth Amendment violation for either failure to protect or deliberate indifference to safety, an incarcerated plaintiff must show first, "that he is incarcerated under conditions posing a substantial risk of serious harm," and second, that the prison official had a "sufficiently culpable state of mind," which in "prison-conditions cases" is "one of deliberate indifference to inmate health or safety."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *see also Lewis v. Swicki*, 629 Fed.Appx. 77, 79 (2d Cir. 2015) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). To show deliberate indifference, the plaintiff must show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," which means that the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Thus, the "deliberate indifference standard embodies both

an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *see also Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

### 1.   Failure to Protect Claims

Morgan's remaining claims include Section 1983 claims alleging that Godding, Chapdelaine, McCormick, Lindsey, and Maldonado failed to protect him in violation of the Eighth Amendment. *See* Motion to Dismiss Order at 22.

### a.   Captain McCormick

Morgan originally alleged that he sent an Inmate Request to McCormick on December 18, 2013. *See* Compl. ¶ 52, ECF No. 1. The request included allegations that Rodriguez had threatened Morgan with bodily harm. *See* Compl. Ex. 8, ECF No. 1-1 at 27. Morgan claimed that McCormick did not respond to this request in writing, but that after he sent the request he encountered McCormick in the hallway at Osborn and raised the issues in the request. McCormick indicated that he would call Morgan to his office to discuss the request, but he never did so. Compl. ¶ 53; Morgan Aff. ¶¶ 19-20.

McCormick has now filed an affidavit and testifies that, on December 10, 2013, DOC transferred him from Osborn to the District One Office of the DOC. *See* McCormick Aff. ¶ 3, ECF No. 83-11. McCormick testifies that his duties and responsibilities at Osborn ended when he was reassigned to the District One Office. *Id.* McCormick further states that he does not recall ever receiving or seeing Morgan's December 18, 2013 Inmate Request, was unaware of

any problems between Morgan and Rodriguez, and had no reason to think that Mr. Morgan was at risk of harm from Inmate Rodriguez.  *See id.* ¶¶ 5-6.

The only evidence that Morgan offers to rebut McCormick's affidavit is his own affidavit, which reiterates his allegation that he had seen and spoken to McCormick about his December 18, 2013 request.  *See* Morgan Aff. ¶¶ 19-20.  Morgan's Rule 56 Statement contradicts his affidavit by admitting the paragraphs of Defendants' Rule 56 statement that discuss McCormick's December 10, 2013 transfer away from Osborn, the end of McCormick's responsibilities at Osborn, and McCormick's lack of knowledge of Morgan's December 18, 2013 request regarding Rodriguez's threats against Morgan.  *See* Def.'s Rule 56 Statement ¶¶ 35-37, ECF No. 82-4; Pl.'s Rule 56 Statement ¶¶ 35-37, ECF No. 100-1.

Under Local Rule 56(a)(1), any "material facts set forth in [the summary judgment movant's Rule 56 statement] and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed . . . by the opposing party."  Local R. Civ. P. 56(a)(1).  The Court therefore deems the evidence brought by Defendants surrounding McCormick's December 10, 2013 transfer and lack of knowledge of Morgan's December 18, 2013 request as "undisputed."  *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285, 2016 WL 3512196, at *1 n. 4 (E.D.N.Y. June 22, 2016) ("Where a party either (i) admits or (ii) denies without citing to admissible evidence facts alleged in the opposing party's Local Rule 56.1 Statement, the Court shall deem such facts undisputed.").

The undisputed evidence shows that McCormick could not have been aware of Morgan's allegations regarding Rodriguez's threats because McCormick no longer worked at Osborn as of December 18, 2013, when Morgan first reported the threat.  This demonstrates an absence of a

genuine issue of material fact and Captain McCormick's entitlement to judgment as a matter of law regarding the failure to protect claim Morgan brings against him.  *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 339 (S.D.N.Y. 2003) (finding no failure to protect claim in the absence of "facts that show [defendant correction officer] . . . had knowledge of, or reason to have knowledge of, any danger to [plaintiff] prior to the [i]ncident that could place particular responsibility on [defendant] for protecting [plaintiff]").  Morgan will not be able to show that McCormick "was aware of any specific risk to [Morgan], which [McCormick] ignored," as is required to make out an Eighth Amendment failure to protect claim.  *Id.*  The Court therefore grants summary judgment in favor of Defendants as to the Eighth Amendment failure to protect claim against McCormick.

### b.      Correctional Officers Maldonado and Lindsey

Morgan's Complaint alleged that, on January 5, 2014, soon after second shift began, he spoke to Lindsey and Maldonado and informed them that Rodriguez, who was also housed in Unit B, had threatened him and that he feared for his safety.  Compl. ¶ 53.  Lindsey and Maldonado allegedly took no action in response to Morgan's complaints about his safety.  *Id.*  A few hours after Mr. Morgan spoke to Lindsey and Maldonado, Rodriguez assaulted Mr. Morgan in the shower.  *Id.*; Morgan Aff. ¶ 23.

Defendants now argue that Morgan's allegations that he informed Lindsey and Maldonado about the risk of harm from Rodriguez are conclusory and that he has provided no support for these assertions.  *See* Def.'s Br. at 8-9.  Morgan has, however, supported his allegations with an affidavit stating that he spoke to Lindsey and Maldonado the day of the assault and communicated to them that Rodriguez, who resided in the same housing unit, had

threatened to harm him and that he feared for his safety.  *See* Morgan Aff. ¶ 22.  Within hours of

Morgan informing Lindsey and Maldonado of his safety concerns, Rodriguez assaulted Morgan.

*Id.* ¶ 23.  Morgan also raised these same allegations with regards to the conduct of Lindsey and

Maldonado in an Inmate Request and a grievance that he filed after the assault.  *See* Compl. Exs.

9, 15, ECF No. 1-1 at 29, 43-44.

Morgan has therefore presented evidence supporting his claim that he informed Lindsey

and Maldonado of the threat to his safety from Rodriguez before the assault by Rodriguez.  *See*

Local R. Civ. P. 56(a)(3) (providing that any denials in a nonmovant's Rule 56 statement

responding to motion for summary judgment must "be followed by a specific citation to (1) the

affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be

admissible at trial").  Defendants have offered no evidence or affidavits to contradict Morgan's

evidence.

Morgan's statements in his affidavit and grievance create a genuine issue of material fact

as to whether Lindsey and Maldonado are liable for a failure to protect him in violation of the

Eighth Amendment: whether they were aware of the risk of harm that he faced from Inmate

Rodriguez before the assault; whether the risk of harm was substantial; and whether they

deliberately failed to take action to abate the harm he suffered.  *See Farmer*, 511 U.S. at 834,

837.  The Court therefore denies summary judgment as to the Eighth Amendment failure to

protect claims against Lindsey and Maldonado.

### c.      Warden Chapdelaine and Captain Godding

Morgan alleges that he sent an Inmate Request to Godding in November 2013 and an

Inmate Request to Chapdelaine in December 2013, before the incident involving Rodriguez.

*See* Compl. Ex.s 6-7, ECF No. 1-1 at 25-26.  The Inmate Requests included specific allegations regarding Morgan's fears of being harmed by Rodriguez, who was confined in the same housing unit and was allegedly a member of the Los Solidos gang.  *See id.*  The November 14, 2013 request was addressed to Godding, but included a notation that a copy had also been sent to Chapdelaine.  *See* Compl. Ex. 6, ECF No. 1-1 at 25.

In his affidavit, Morgan testifies that Godding did not respond in writing to his November 14, 2013 Inmate Request, but that he frequently toured Unit B.  *See* Morgan Aff. ¶ 15.  During at least one of those tours, according to Morgan, Godding discussed Morgan's November 14, 2013 request with him.  *Id.*  Morgan testifies that during this conversation, Godding suggested that Morgan mind his own business and "learn to fight like a man."  *Id.*  Godding did not file an affidavit in support of the motion for summary judgment.

In his affidavit, Morgan also testifies that Chapdelaine did not respond in writing to his December 2, 2013 Inmate Request, but that he spoke to Chapdelaine while she did a tour of his housing unit after he had sent her the request.  *See* Morgan Aff. ¶¶ 16-17.  During that conversation, Morgan states that Chapdelaine acknowledged that she had received the December 2, 2013 request.  *See id.* ¶ 17.

Chapdelaine has filed an affidavit testifying that she does not remember receiving either the November 14, 2013 Inmate Request or the December 2, 2013 Inmate Request.  *See* Chapdelaine Aff. ¶¶ 8, 15, ECF No. 87.  Furthermore, having since reviewed the requests, which Morgan had attached to his Complaint in this case, Chapdelaine now states that there was nothing in either request that would have alerted her to when and where Rodriguez made threats to Morgan, what Rodriguez specifically said to Morgan, or that there was a risk of substantial

harm to Morgan.  *See id.* ¶¶ 9, 12, 16, 18.  Chapdelaine states that the allegations were so vague

that she would have been unable to assess their validity.  *See id.* ¶¶ 12, 18.  She also states that

she did not have any conversations with Morgan that would have alerted her that Rodriguez had

threatened him, that he was afraid of Rodriguez, or that a fight might occur between Morgan and

Rodriguez.  *See id.* ¶¶ 22-23.

Assessing the factual record in the "light most favorable to" Morgan and "draw[ing] all

reasonable inference in [his] favor," Chapdelaine and Godding not only received Morgan's

Inmate Requests, but also spoke to Morgan in person regarding his concerns and fears about

Rodriguez.  *Weinstock*, 224 F.3d at 41.  Morgan has presented evidence that he made defendants

Chapdelaine and Godding aware of a specific threat to his safety by identifying Rodriguez, who

resided in the same housing unit as himself, and describing the threats of harm made by

Rodriguez.  Morgan was then assaulted by Rodriguez within a few months of when he made

Chapdelaine and Godding aware of Rodriguez's threats.

A jury could find that Morgan's written and verbal communications with Chapdelaine

and Godding were sufficient to put them on notice of a serious risk to his safety such that they

needed to act to protect him from that risk.  *See Shell v. Brun,* 585 F. Supp. 2d 465, 469

(W.D.N.Y. 2008) ("[I]n failure to protect cases, a prisoner normally proves actual knowledge of

impending harm by showing that he complained to prison officials about a specific threat to his

safety."); *Beckles v. Bennett*, No. 05-CIV-2000 (JSR), 2008 WL 821827, at *17 (S.D.N.Y. Mar.

26, 2008) ("Courts have found that, when an inmate informs corrections officers about a specific

fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to

protect.").  The Court therefore finds that there are issues of disputed material fact that as to

15

whether Chapdelaine and Godding failed to protect Morgan in violation of the Eighth

Amendment, and summary judgment on these claims is denied.

### d.      Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the entirety of Morgan's

Complaint. *See* Def.'s Br. at 24-26.  Because, as discussed above and below, the only

constitutional claims that Morgan can show are the Eighth Amendment failure to protect claims

against Chapdelaine, Godding, Maldonado, and Lindsey in relation to the assault by Rodriguez,

the Court considers the issue of qualified immunity only as to these claims.

Qualified immunity "protects government officials from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(internal quotation marks omitted).  An official is entitled to qualified immunity unless plaintiff

shows both "(1) that the official violated a statutory or constitutional right" and "(2) that the right

was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S.

731, 735 (2011).  The Supreme Court has held that district courts have the discretion to choose

which of the two prongs of the qualified immunity standard to decide first in view of the

particular circumstances surrounding the case to be decided. *See Pearson*, 555 U.S. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged

conduct . . . every 'reasonable official would have understood that what he is doing violates that

right.'" *al-Kidd*, 563 U.S. at 731, 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987)).  There is no requirement that a case have been decided which is directly on point, "but

existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

16

"[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 658 (2012). Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640).

Because Defendants cannot show either that they did not, as a matter of law "violate[] a statutory or constitutional right" or that Morgan's Eighth Amendment right to his safety was not "clearly established at the time of the challenged conduct," they are not entitled to qualified immunity on the Eighth Amendment failure to protect claim. *al-Kidd*, 563 U.S. at 735. As discussed in the above sections, Defendants have also failed to show that, as a matter of law, Chapdelaine, Godding, Maldonado, and Lindsey did not "violate[] a statutory or constitutional right," namely Morgan's Eighth Amendment right to be free from threats to his safety at the hands of another inmate. *al-Kidd*, 563 U.S. at 735.

In 2013 and 2014, when Morgan reported his fears about Rodriguez, Defendants ignored the reports, and Rodriguez eventually assaulted Morgan, it was also clearly established that a prison official's deliberate indifference to threats to an inmate's safety by another inmate would violate the Eighth Amendment. *See Farmer,* 511 U.S. at 833 (correctional officers have a "duty . . . to protect prisoners from violence at the hands of other prisoners"); *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir.1996) (finding that Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody"). The Court therefore finds that Chapdelaine, Godding, Maldonado and Lindsey are not entitled to summary judgment on the basis of qualified immunity with regards to Morgan's Eighth Amendment failure to protect claims related to the assault on Morgan by Rodriguez.

### 2.      Deliberate Indifference to Safety

Morgan's surviving claims under Section 1983 include various claims alleging that Defendants violated the Eighth Amendment through their deliberate indifference to his safety. These claims include Morgan's claims that Gonzalez, Torres, Ulm, Leiper, and Clayton were deliberately indifferent to his safety when they called him a snitch in front of other inmates.  *See* Order on Motion to Dismiss at 22.  Morgan's remaining deliberate indifferent claims also include claims against Lizon, Wright, Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros (collectively, the "Supervisory Defendants") for failing to take any action to protect Morgan from the potential harm that could have resulted from the conduct of Gonzalez, Torres, Ulm, Leiper, and Clayton.  *See id.*  Morgan had alleged that, while the Supervisory Defendants were not involved in calling Morgan a snitch in front of other inmates, Morgan had made them aware of the problem with Gonzalez, Torres, Ulm, Leiper, and Clayton by sending the Supervisory Defendants letters or Inmate Requests referring to the conduct.

### a.      Gonzalez, Torres, Ulm, Leiper, and Clayton

Defendants argue that Morgan's allegations that Gonzalez, Torres, Ulm, Leiper, and Clayton called him a snitch or a confidential informant in front of other inmates are unsupported by evidence.  *See* Def.'s Br. at 15-17.  Defendants further argue that Morgan has failed to submit evidence or even allege that he suffered any physical injury as a result of the alleged statements by Gonzalez, Torres, Ulm, Leiper, and Clayton.  *See id.* at 15-16  Defendants argue that Morgan has failed, as a matter of law, to submit evidence of a genuine issue of material fact as to his claims of deliberate indifference to his safety in violation of the Eighth Amendment.

Courts in the Second Circuit have acknowledged that, in a prison setting, labeling an

inmate as "a snitch" may pose a threat to that inmate's safety or health and give rise to an Eighth

Amendment deliberate indifference claim. *See Campbell v. Gardiner,* No. 12–CV–6003P, 2014

WL 906160, *4 (W.D.N.Y. Mar. 7, 2014) (gathering cases allowing a deliberate indifference

claim where a corrections officer identified an inmate as being an informant or snitch in front of

other inmates); *see also Allah v. Juchnewioz*, No. 93-CIV-8813 (LMM), 1999 WL 562100, at *3

(S.D.N.Y. July 30, 1999) ("Many courts have recognized . . . in the context of Eighth

Amendment analysis, the dangers a prisoner faces from his fellow inmates when labeled a snitch

or informant.").

Generally, a prison official's verbal statement labeling an inmate as a snitch or informant

will not, however, meet the objective prong of the Eighth Amendment, of "incarcerat[ion] under

conditions posing a substantial risk of serious harm," *Lewis*, 629 Fed.Appx. at 79, absent

allegations that the inmate faced actual or imminent physical injury or harm as a result of the

comment. *See Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of

prisoner plaintiff's case where plaintiff failed to allege that the other inmate actually "assaulted

him . . . threatened him with physical violence nor even that there were credible rumors that [the

other inmate] intended to attack him"). Making out an Eighth Amendment claim based on a

corrections officer's labeling an inmate a snitch therefore requires plaintiff to make "allegations

or proffer[] evidence of actual physical harm" or the substantial risk thereof. *Green v. City of

N.Y. Dep't of Corr.*, No. 06-CIV-4978 (LTS) (KNF), 2008 WL 2485402, at *7 (S.D.N.Y. June

19, 2008); *see also Abney v. Jopp*, 655 F. Supp. 2d 231, 233 (W.D.N.Y. 2009) (noting that

"[a]lthough courts have recognized that being labeled a 'snitch' in the prison environment can

indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment, in

19

general prison officials will not be liable for such actions absent a showing that the inmate

suffered actual harm as a result" (internal citations omitted)).

In opposing summary judgment, Morgan has included the following statements in his

affidavit:

- Gonzales
  - From January 5, 2014 to February 18, 2014, when Morgan was confined in the restrictive housing unit at Osborn, Gonzalez called him a snitch during escorts to the medical department, Morgan Aff. ¶ 32;
- Clayton
  - Around February 19, 2014, Clayton informed members of the Bloods gang that Morgan was a snitch and a confidential informant who was informing on them, *id.* ¶ 30;
  - Clayton also told other inmates that Morgan was a snitch and that prison officials would deny Morgan's request for protective custody and suggested that the other inmates could assault Morgan for acting as a snitch, *id.*;
  - Morgan wrote complaints to Lizon, Wright, Maldonado, Quiros, and Dzurenda regarding Clayton's conduct, *id.* ¶ 31;
- Torres
  - Around March 14, 2014, Torres called Morgan a snitch, a sexual pervert and a child molester in front of other inmates, *id.* ¶ 33;
- Leiper and Ulm
  - In May 2014, Morgan filed complaints with Maldonado alleging that Leiper and Ulm had called him a snitch and stated that "snitches get stitches" in front of other inmates, *id.* ¶ 34; and
  - When Leiper and Ulm found out that Morgan had reported their comments to Maldonado, they allegedly told other inmates that Morgan had snitched on them (Leiper and Ulm) and suggested that the other inmates hit Morgan in the head with a bar of soap, *id.* ¶ 35.

Morgan argues that Gonzalez, Torres, Ulm, Leiper, and Clayton would have known that labeling

Morgan a snitch would create a risk to his safety.  See Pl.'s Br. at 7, ECF No. 100.  Morgan

further argues that he need not demonstrate that he suffered a physical injury to state a failure to

protect claim or deliberate indifference to safety claim as to Gonzales, Torres, Ulm, Leiper, and

Clayton.  *Id.* at 8.

Morgan fails to present evidence or affidavit testimony that any other inmate called him a

snitch, verbally harassed him, threatened him, or injured him as a result of the conduct of Gonzalez, Torres, Ulm, Leiper, and Clayton.  Morgan has merely raised the possibility that he could have been harmed as a result of these Defendants' comments.  This affidavit testimony is too speculative and remote for a reasonable jury to find that the objective prong of the Eighth Amendment, that Morgan was "incarcerated under conditions posing a substantial risk of serious harm," *Lewis*, 629 Fed.Appx. at 79, was met.  *See Hamilton v. Fischer*, No. 6:12-CV-6449 MAT, 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013) (dismissing plaintiff inmate's Eighth Amendment claim where his sole allegations where that defendant correctional officers "exposed him to an unreasonable risk of harm by calling him a 'snitch' in front of other inmates" and commenting about "stitches for snitches" but included no other factual allegations that that "if proven, would establish that he ever faced actual or imminent harm"); *Bouknight v. Shaw*, No. 08-Civ-5187, 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009) (concluding that plaintiff failed to make out Eighth Amendment claim against officer based on allegation that officer labeled plaintiff a "snitch," where plaintiff "ha[d] not alleged any facts that, if proven, would establish that he ever faced actual or imminent harm," and adding that "[t]he Court is unwilling simply to assume that such a risk existed merely because [defendant officer[ spread rumors about him" (internal quotation marks omitted)); *Abney*, 655 F. Supp. 2d at 233-34 (granting defendant corrections officer's motion for summary judgment on Eighth Amendment deliberate claim because plaintiff had not alleged or presented evidence that he "ha[d] ever been physically attacked or injured as a result of" defendant's statements to other inmates that plaintiff was a snitch).

Because Morgan has offered no evidence that the comments from Gonzalez, Torres, Ulm, Leiper, and Clayton identifying him as a snitch or suggesting that other inmates could harm him because he had acted as a snitch actually subjected him to a "substantial risk of serious harm," *Lewis*, 629 Fed.Appx. at 79, he has not met the objective component of the deliberate indifference to safety standard.  The Court therefore finds that no reasonable jury could conclude that these Defendants are liable for deliberate indifference to a substantial risk of serious harm to Morgan in violation of the Eighth Amendment.  Accordingly, Defendants' motion for summary judgment is granted as to these claims.

### b.    Supervisory Defendants

Defendants also argue that Morgan has not demonstrated the personal involvement of the Supervisory Defendants in the alleged deliberate indifference to his safety based on the conduct of Gonzalez, Torres, Ulm, Leiper, and Clayton.  *See* Def.'s Br. at 17-19.

"It is well settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section 1983]."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). The involvement of a supervisory defendant may be shown in one of the following ways, that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.*

A supervisory official cannot be held liable under Section 1983 solely "on the basis of *respondeat superior* or simply because he is atop the prison hierarchy." *Lewis v. Cunningham*, 483 Fed. App'x. 617, 619-20 (2d Cir. 2012). Furthermore, the plaintiff must also show "an affirmative causal link between the supervisor's inaction and h[is] injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Because, as discussed above, no reasonable jury could conclude that Morgan can make out an Eighth Amendment deliberate indifference claim against Gonzalez, Torres, Ulm, Leiper, and Clayton for their comments referring to Morgan as a snitch in front of other inmates, he also may not assert a claim for supervisor liability against the Supervisory Defendants with regards to those comments. *See Gonzalez v. Wright*, 665 F. Supp. 2d 334, 356 (S.D.N.Y. 2009) ("The dismissal of the Section 1983 claims against the defendants actually involved in [the conduct at issue] mandates dismissal of the supervisory liability claim . . . as well."). Where a plaintiff "has not established any underlying constitutional violation, [he] cannot state a claim for [Section 1983] supervisor liability." *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 807-08 (S.D.N.Y. 2011). The Court therefore grants summary judgment in favor of the Supervisory Defendants with regards to Morgan's Eighth Amendment deliberate indifference to safety claims related to the conduct of Gonzalez, Torres, Ulm, Leiper, and Clayton.

### B.    First Amendment Retaliation Claim

Morgan's remaining claims also include First Amendment retaliation claims against Whidden and Maldonado. *See* Motion to Dismiss Order at 22. Specifically, Morgan contends

23

that, on or around November 8, 2013, Whidden denied his request for protective custody in retaliation for Morgan's having filed previous lawsuits against Whidden.  *See* Morgan Aff. ¶¶ 7-9.  Morgan further argues that, around the end of January 2014, Maldonado denied his request for protective custody in retaliation for Morgan's having filed previous lawsuits and grievances against Maldonado.  *Id.* ¶¶ 28-29.  Defendants move for summary judgment on these claims, arguing that Morgan has failed to demonstrate that there is a genuine issue of material fact as to whether Whidden and Maldonado had an improper retaliatory basis for denying Morgan's requests for placement in protective custody.  *See* Def.'s Br. at 19-26.

Under the First Amendment, prison officials may not retaliate against inmates for exercising their constitutional rights. To state a claim of retaliation, Morgan must show the following: (1) that he was engaged in constitutionally protected conduct or speech, (2) that the prison officials took adverse action against him, and (3) that a causal connection existed between the protected speech or conduct and the adverse action.  *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003).  To meet the third element, Mr. Chambers must allege that retaliation for the protected conduct or speech "was a substantial or motivating factor for the adverse actions taken by prison officials."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003); *see also Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir.2012). Because of the potential for abuse and the "ease with which claims of retaliation may be fabricated," courts should examine prisoner retaliation claims with "skepticism and particular care."  *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir.2001) (quoting *Colon*, 58 F.3d at 872).

The parties do not appear to dispute that Morgan is able to show the first two elements of a retaliation claim.  The filing of grievances is "a constitutionally protected activity," which

24

allows Morgan to show the first element required to make out a claim of First Amendment

retaliation. *Davis*, 320 F.3d at 352–53. As to the second element of adverse action, "[o]nly

retaliatory conduct that would deter a similarly situated individual of ordinary firmness from

exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."

*Davis*, 320 F.3d at 353. Courts in this Circuit have found that "refusal of protective custody" by

a prison official defendant can be an "adverse action" for the purposes of a First Amendment

retaliation claim because it could cause a prisoner to "fear[] for his safety." *Cruz v. Grosso*, No.

9:13-CV-30 (FJS) (TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014); *see also Cruz v.

Lee*, No. 14-CV-4870 (NSR) (JCM), 2016 WL 1060330, at *6 (S.D.N.Y. Mar. 15, 2016)

("Plaintiff alleges that Defendants' denial of protective custody . . . constitutes an adverse action

because Plaintiff feared for his safety without custodial protection. It cannot be said, as a matter

of law, that this fear would not deter a similarly situated individual from filing further lawsuits or

grievances. Therefore, Plaintiff has sufficiently alleged an adverse action." (internal citations

omitted).

As for the third element of a causal connection between protected conduct such as the

filing of grievances or lawsuits and the alleged adverse action of Whidden and Maldonado

denying Morgan's requests to be placed in protective custody, the court may consider several

factors in determining whether such a causal link exists. "A plaintiff can establish a causal

connection that suggests retaliation by showing that protected activity was close in time to the

adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). The Second Circuit has

"not drawn a bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship between the exercise of a federal constitutional right

and an allegedly retaliatory action." *Id.* It has found that the "passage of only six months between the dismissal of [the prisoner plaintiff's] lawsuit and an allegedly retaliatory" act by a defendant in the lawsuit "is sufficient to support an inference of a causal connection." *Id.* The Supreme Court has found that, in the employment retaliation context, a gap of twenty months is too long to establish causality. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). Furthermore, the Second Circuit generally "require[s] some further evidence of retaliatory animus" beyond temporal proximity between a plaintiff's protected act and defendant's adverse action "before permitting a prisoner to proceed to trial on a retaliation claim. *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013).

### 1.    Warden Maldonado

Morgan argues that Maldonado denied his January 2014 request to be placed in protective custody in retaliation for Morgan filing a lawsuit against him in 2011.[2] Morgan filed the lawsuit on September 22, 2011, more than two years before Maldonado denied his request for protective custody towards the end of January 2014. Morgan's lawsuit against Maldonado was closed on May 2, 2012, nearly twenty months before the denial of protective custody. The Court finds that, because the temporal gap between the filing of the lawsuit and Maldonado's denial of protective custody is more than two years, no reasonable jury could find that there is a causal connection between the lawsuits and the allegedly retaliatory act. *See Clark Cty.*, 532 U.S. at 274. Morgan cannot, as a matter of law, shown a genuine issue of material fact as to the causal connection between his protected activity of filing a lawsuit and Maldonado's January

---

[2]  The case is: *Morgan v. Arnone*, Case No. 3:11-cv-1475 (JBA) (filed 9/22/2011, closed 5/2/2012).

2014 denial of his request for protective custody.  The Court therefore grants summary judgment in favor of Maldonado as to Morgan's First amendment retaliation claim.

### 2.  Warden Whidden

#### a.  Causal Connection

Morgan argues that Whidden denied his November 2013 request to be placed in protective custody in retaliation for his filing a lawsuit against her in 2001, filing two lawsuits against her in 2005, and for submitting an Inmate Request Form to her on August 8, 2013.[3]  As to the lawsuits that Morgan filed against Whidden in 2001 and 2005, the last of these cases was closed on September 9, 2008, while Morgan alleges that Whidden denied his request for protective custody around November of 2013, more than five years later.  The Court finds that, because the temporal gap between the lawsuits and Whidden's denial of protective custody is far longer than 20 months and that no reasonable jury could find that there is a causal connection between the lawsuits and the allegedly retaliatory act. *See Clark Cty.*, 532 U.S. at 274 (2001).

As for the August 8, 2013 Inmate Request grievance,  Morgan filed it within three months of Whidden's decision, in November of 2013, to deny the protective custody placement. *See* Compl. Ex. 4, ECF No. 1-1 at 9-10.  A reasonable jury could find a gap of three months could establish causation based on the temporal proximity of the protected activity and the adverse action.  *See Espinal*, 558 F.3d at 129 (finding six months sufficient to support causal link).

---

[3]  The cases are: *Morgan v. Rowland*, Case No. 3:01-cv-1107 (CFD) (filed 6/14/2001, closed 3/20/2006); *Morgan v. Regan*, Case No. 3:05-cv-873 (CFD) (filed 6/1/2005, closed 11/28/2007); and *Morgan v. Lantz*, Case No. 3:05-cv-1659 (MRK) (filed 10/25/2005, closed 9/9/2008).

A plaintiff, however, may not rely on temporal proximity alone to defeat summary judgment.  *See Faulk*, 545 F. App'x at 58 ("[W]e have consistently required some further evidence of retaliatory animus [beyond temporal proximity] before permitting a prisoner to proceed to trial on a retaliation claim."); *Ziemba v. Thomas*, 390 F. Supp. 2d 136, 157 (D. Conn. 2005) ("Temporal proximity alone . . . is not sufficient for the plaintiff's claim [of retaliatory transfer] to survive summary judgment.").  Thus, Morgan must also provide other evidence that raises an inference of that Whidden's denial of his request for protective custody was due to "retaliatory animus."  *Faulk*, 545 F. App'x at 58.

The Second Circuit has found that an inmate's testimony that a prison official admitted "the existence of a retaliatory scheme" is enough, when combined with other circumstantial evidence suggesting retaliation, to defeat summary judgment on a First amendment retaliation claim.  See *Colon*, 58 F.3d at 872-73 ("[Plaintiff] offers more than circumstantial proof; he also presents direct evidence of retaliation, namely, [defendant's] alleged admission of the existence of a retaliatory scheme. To be sure, [defendant] submitted an affidavit denying that he ever made any such statement. But the disparity between the affidavits . . . itself creates a credibility issue that is not readily amenable to resolution on summary judgment.").  Morgan's affidavit states that Whidden informed him that she would "recommend[] that my protective custody application be denied in retaliation" against him.  Morgan Aff. ¶ 8.  This creates a genuine issue of material fact that Whidden's denial of his request for protective custody may have a causal link to Morgan's protected activity of filing the Inmate Request grievance against her on August 8, 2013.

**b.      Legitimate Reasons to Deny Protective Custody**

Defendants argue that, regardless of whether Morgan can show that Whidden's actions were retaliatory, Whidden also had legitimate reasons to deny Morgan's request for protective custody.  *See* Def.'s Br. at 22-23.  "Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred."  *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (discussing prisoner case).  Once a plaintiff has "carrie[d] that burden" of showing the three elements of a retaliation claim, "defendants must show by a preponderance of the evidence that they would have [taken the allegedly retaliatory action] even in the absence of the protected conduct."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).  To the extent that the adverse action was "taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone."  *Id.*  Such proper reasons are "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."  *Id.* (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)).  Because Defendants have submitted "a properly supported [summary judgment] motion" on this claim, Morgan now "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (discussing summary judgment motions in a case involving a prisoner plaintiff).

On November 1, 2013, the shift commander of Morgan's housing unit at Robinson submitted a request for protective custody on Morgan's behalf, Maiga Aff. ¶ 21, based on

Morgan's allegations that he feared for his safety because a specific inmate had called him a snitch and a rat; that other inmates in his housing unit had threatened to harm him because he had provided information regarding gang activity at the facility to members of the intelligence unit; and that unknown inmates had damaged his personal property. *See* Protective Custody Req. at 1-2. At this time, Morgan was confined in the restrictive housing unit pending the investigation into his safety concerns. *See id.* An investigator conducted an investigation based on Morgan's protective custody request and interviewed inmate witnesses; interviewed Morgan; and reviewed Morgan's prior disciplinary history, restrictive and protective housing placements and past efforts made by Robinson officials to address Morgan's concerns. *See id.* at 3, 5-6, 9.

On November 4, 2013, the investigator recommended that Morgan's request for protective custody placement be denied because (a) there was insufficient evidence to support a legitimate threat to Morgan's safety and (b) there was a reasonable housing alternative for Morgan. *See* Protective Custody Req. at 10 ("The basis for this recommendation is based on a lack of evidence to support a valid threat to Inmate Morgan's personal safety and the belief that a reasonable housing alternative is available."). The investigator recommended that Morgan "be housed in general population in a celled facility on single cell status." *Id.*

On November 5, 2013, Whidden determined that placement of Morgan in protective custody was not warranted because the alleged threats against him could not be substantiated. *See* Protective Custody Req. at 11. She therefore denied Morgan's request for protective custody placement, but approved the transfer of Morgan out of Robinson,which had a "dormitory lifestyle," *id.* at 3, to a celled facility to be housed in a single cell in general population. *See id.* at 11. Quiros concurred with Whidden's recommendation. *See id.*

Whidden has shown that her November 2013 decision to deny Morgan's request for protective custody and instead transfer him to Osborn was, taken, at least in part for "proper" reasons and that the decision would have been made "even in the absence of the protected conduct" of Morgan filing an Inmate Request grievance against her only months before." *Graham*, 89 F.3d at 79. When evaluating Whidden's legitimate reasons justifying the decision, the Court keeps in mind the Second Circuit's instruction that courts should "recognize that prison officials have broad administrative and discretionary authority" when it comes to prison administration decisions. *Id.*

Whidden has provided evidence showing that the rejection of Morgan's request for protective custody was based on there being insufficient evidence to support a conclusion that Morgan was at substantial risk of serious harm if he remained in general population at Robinson. *See* Protective Custody Req. at 11; Maiga Aff. ¶ 22. Whidden has presented evidence that DOC policy provided that "[i]f an alternative placement is available then it will be utilized before Protective Custody assignment." Maiga Aff. ¶ 23; *see also* DOC Administrative Directive § 9.9(9), ECF No. 82-7 ("Assignment to Protective Custody shall only be authorized when, after an investigation, the approving authority determines that the inmate is at substantial risk of serious harm and no alternative placement is available."); *Id.* § 9.9(8) ("An inmate may be recommended for transfer to another facility or out of state as an alternative to a Protective Custody assignment.").

Whidden and other prison officials concluded that transfer from Robinson to an alternative placement was justified because, despite the efforts of prison officials at Robinson to address Morgan's concerns and to find him a suitable housing unit, it had become evident that

the dormitory-style housing units at the facility were not appropriate to meet Mr. Morgan's needs.  *See* Protective Custody Req. at 9, 11; Maiga Aff. ¶ 51.  Whidden had concluded that an alternative placement in a single cell in a celled facility would be most beneficial to Mr. Morgan. *See* Protective Custody Req. at 9 ("It is feasible that Inmate Morgan could be managed in a celled facility on single cell status.")

Because Whidden has submitted evidence of legitimate, non-retaliatory reasons for her decision to deny Morgan's request for protective custody placement and Morgan has submitted no evidence to rebut the evidence of these legitimate alternative bases for the denial of the requests, he has not met his burden of demonstrating that the Inmate Request grievance that he filed against Whidden in August 2013 was the substantial or motivating factor for the decisions. *See Crawford-El*, 523 U.S. at 600 (requiring prisoner plaintiffs to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive" following defendants' submission of a "properly supported" summary judgment motion); *Davidson v. Chestnut*, 193 F.3d 144, 148 (2d Cir. 1999) ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail.") (discussing prison case).  The Court therefore grants summary judgment in favor of Whidden on the First Amendment retaliation claim against her.

### C. State Law Claims

Morgan's remaining claims include a Connecticut state law intentional infliction of emotional distress claim.  *See* Motion to Dismiss Order at 17 n.1.  Defendants do not address this claim in their summary judgment brief.  *See generally* Def.'s Br.  A court may only grant

summary judgment if the moving party meets its "burden of showing that no genuine factual dispute exists," such that the moving party is "entitled to a judgment as a matter of law." *Carlton*, 202 F.3d at 133.  By failing to discuss the intentional infliction of emotional distress claims in any way, Defendants fail to meet their burden and cannot prevail on their summary judgment motion as to these claims.  The Court therefore denies summary judgment on Morgan's remaining intentional infliction of emotional distress claims.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 82, is **GRANTED** as to the Eighth Amendment deliberate indifference to safety claims against Gonzalez, Torres, Ulm, Leiper, Clayton, Lizon, Wright, Maldonado, Manning, Ott, Barone, Dzurenda, Semple, Lewis, and Quiros, in relation to comments from Gonzalez, Torres, Ulm, Leiper, and Clayton indicating that Morgan was a snitch in front of other inmates; the Eighth Amendment failure to protect claim against McCormick centering on the assault by Rodriguez on Morgan; and the First Amendment retaliation claims against Whidden and Maldonado.  The motion is **DENIED** as to the Eighth Amendment failure to protect claim against Chapdelaine, Godding, Maldonado and Lindsey arising from the assault by Rodriguez on Morgan and as to the intentional infliction of emotional distress claims.

SO ORDERED at Bridgeport, Connecticut, this 31st day of March, 2017.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge