# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LLOYD GEORGE MORGAN, JR.,<br>    *Plaintiff*,<br><br>v.<br><br>JAMES E. DZURENDA *et al.*,<br>    *Defendants*. | No. 3:14-cv-00966 (VAB) |

## RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Lloyd George Morgan, Jr. ("Plaintiff"), has sued Warden Carol Chapdelaine, Captain Kyle Godding, Officer Maritza Maldonado and Officer Jeremy Lindsay (collectively "Defendants"), who are employed by the Connecticut State Department of Correction ("DOC"), under 42 U.S.C. § 1983, alleging violations of rights guaranteed to him under the Eighth Amendment to the U.S. Constitution. While incarcerated at Osborn Correctional Institute in Somers, Connecticut, Mr. Morgan was violently assaulted by a fellow inmate. He now seeks to hold Defendants responsible for acting with deliberate indifference to his safety and security. Mr. Morgan also alleges a state law claim of intentional infliction of emotional distress.[1]

Defendants have moved for summary judgment.

For the following reasons, the motion is **GRANTED**.

---

[1] At the outset, the Court notes the work of appointed counsel, Sherwin M. Yoder, Douglas A. Balko, and James K. Robertson, Jr. Yoder, Balko, and Robertson came into this case, after it had been on the docket for some time, and have devoted considerable time and effort on Mr. Morgan's behalf.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

In December 2017, Mr. Morgan finished serving a term of imprisonment and became free. Morgan Aff. ¶ 5, ECF No. 136-2. Before then, he had been incarcerated at various DOC facilities, including Garner Correctional Institution ("Garner"), Carl Robinson Correctional Institution ("Carl Robinson"), and Osborn Correctional Institution ("Osborn"). *Id.* ¶ 6. This lawsuit involves an incident that occurred during the second time Mr. Morgan had been placed at Osborn.

## A.      Factual Allegations

For purposes of this motion, all facts are undisputed, unless otherwise noted.

### 1.      The January 5, 2014, Assault

On January 5, 2014, Mr. Morgan reported an assault that happened in the shower to Officer Maldonado, who had been undergoing a tour of the facility. Pl.'s Statement of Material Fact ("SMF") ¶¶ 1, 30, ECF No. 136-1. Officer Maldonado claims to have heard nothing out of the ordinary during her shift, but reported the alleged assault to her supervisor. *Id.* ¶ 31. Mr. Morgan contends that, before the alleged assault, he had verbally informed Officers Maldonado and Lindsay that a Mr. Rodriguez had threatened him and he feared for his life. Morgan Aff. ¶ 29. He explained that he was particularly concerned about recreation time. *Id.* Mr. Morgan testified that, as Mr. Rodriguez beat him, Mr. Morgan cried out "C.O.! C.O.!" in hopes that someone would come intervene. *Id.* ¶ 35. He further testified that, after the assault, he told Officer Maldonado that he had been beaten by Mr. Rodriguez, the very person about whom he had warned her. *Id.* ¶ 37.

Mr. Morgan feels that Officer Maldonado was dismissive of the fact that he had just been assaulted. *Id.* ¶ 38. He explained that she did not call an emergency code, stop recreation, or lock

down the unit. *Id.* Rather, she allegedly allowed Mr. Rodriguez to walk unaccompanied to his cell, while locking Mr. Morgan in the shower for approximately fifteen minutes, treating him as the aggressor. *Id.*

### 2. The Investigation

On January 5, 2014, the day of the assault, Mr. Morgan met with Lieutenant Blair as part of an investigation into the incident. Pl.'s SMF ¶ 32. Lieutenant Blair reported that Mr. Morgan made no mention of having informed Warden Chapdelaine, Captain Godding, Officer Maldonado, or Officer Lindsay that Mr. Rodriguez posed a heightened risk to Mr. Morgan's safety. *Id.* ¶ 33; *see also* Incident Rep. No. OCI-14-01-006 at 5 ("006 Incident Rep."), Defs.' SMF, Ex. C, ECF No. 129. Mr. Morgan, however, has testified that he explained to Lieutenant Blair that he had been "constantly" threated by Mr. Rodriguez and that he had told anyone at Osborn who would listen that he had concerns regarding his personal safety, including Warden Chapdelaine, Captain Godding, and Officers Maldonado and Lindsay. Morgan Aff. ¶ 41.

Mr. Morgan also spoke with Lieutenant Lizon from the Intelligence Office, which Lieutenant Lizon memorialized in an Incident Report dated January 9, 2014. Pl.'s SMF ¶ 38; 006 Incident Rep. at 4. The incident report indicated that Mr. Morgan feared for his safety and believed that he should be placed in protective custody. 006 Incident Rep. at 4. Mr. Morgan explained that he had been working with the Intelligence Team at another correctional facility, Carl Robinson, and gang members discovered his cooperation. *Id.* Mr. Morgan also identified Mr. Rodriguez as a Security Risk Group member of the Los Solidos. *Id.* Lieutenant Lizon noted that Mr. Morgan had written several requests asking for protective custody based on Inmate Rodriguez's reputation as a possible Los Solidos. *Id.* Mr. Morgan submitted requests for protective custody on January 7 and 9, 2014. *Id.* at 36-38.

### 3.    The Grievance Procedure

Complaints about other inmates, staff, and safety can be grieved. Pl.'s SMF ¶ 20. The DOC administrative grievance procedure, also known as Administrative Directive 9.6, requires that an inmate first seek informal resolution of a complaint, in writing, through the use of an Inmate Request Form, before filing a grievance. Pl.'s SMF ¶ 2. The inmate must "clearly state the problem and the action requested to remedy the issue." *Id.* ¶ 4. The appropriate department is required to respond within fifteen days. *Id.* ¶ 2.

If the issue is not resolved at this stage of the process, within thirty days of the occurrence or discovery of the cause of the grievance, the inmate is required to file a grievance using a CN 9602 form, which must be attached to the Inmate Request Form, containing the appropriate staff member's response, among other requirements. *Id.* ¶¶ 5–6, 8. Failure to seek an administrative remedy by using a CN 9602 form is a ground for returning the grievance without a disposition. *Id.* ¶ 7. The Administrative Remedies Coordinator has thirty days from the filing of the grievance to respond to it. *Id.* ¶ 9. If the response proves unsatisfactory, an inmate may appeal to the second level of review within five days after receipt of the determination. *Id.* ¶ 10, 27.

### 4.    Mr. Morgan's Inmate Request Forms

On November 14, 2013, Mr. Morgan has testified that he submitted an Inmate Request Form to Captain Godding, notifying Captain Godding that Mr. Morgan had been working with intelligence officials at Carl Robinson. Morgan Aff. ¶ 19. He explained that a fellow inmate at Osborn, Gabriel Rodriguez, who Mr. Morgan alleged was gang affiliated, had threatened to "snap [his] neck" for being a "snitch" and a "homo," and Mr. Morgan feared for his safety. *Id.*; *see also* Nov. 14, 2013, Inmate Request Form, Pl.'s SMF, Ex. 4, ECF No. 136-5. Mr. Morgan claims that

he verbally expressed to Captain Godding his safety concerns on no fewer than three occasions, before he was assaulted. Morgan Aff. ¶¶ 21, 23.

Mr. Morgan testified that, in response to Captain Godding's indifference, Mr. Morgan submitted an Inmate Request Form to Warden Chapdelaine on December 2, 2013. *Id.* ¶ 25. In it, he explained that Mr. Rodriguez had "constantly threatened [him] with bodily harm." Dec. 2, 2013, Inmate Request Form, Pl.'s SMF, Ex. 5, ECF No. 136-6. He noted that he had written to Captain Godding but that Captain Godding had responded by telling Mr. Morgan to "fight like a man" and stop being a "snitch." *Id.*: Mr. Morgan claims that, in advance of January 5, 2014, he verbally repeated these concerns to Warden Chapdelaine at least once and she acknowledged receiving and reading his request form, but failed to act. Morgan Aff. ¶ 26.

### 5. Mr. Morgan's Grievances

Mr. Morgan filed six CN 9602 grievances between November 2013 and June 2014. *Id.* ¶ 22; Defs.' SMF, Exs. F, G, H, I, J, K, ECF Nos. 127-8-127-13. Two of the six are relevant here. *See generally* March 4, 2014, Grievance No. 115-14-131 ("Grievance 131"), Defs.' SMF, Ex. F, ECF No. 127-8 (regarding being denied protective custody); March 4, 2014, Grievance No. 115-14-132 ("Grievance 132"), Defs.' SMF, Ex. g, ECF No. 127-9 (regarding the January 5, 2014, incident).

Mr. Morgan submitted a grievance regarding the January 5, 2014, assault. Grievance 132. In it, Mr. Morgan notes that he had filed a CN 9601, dated January 6, 2014, with Restrictive Housing Unit Manager Lieutenant Lizon. *Id.* He also stated that he had "ongoing problems with many SRG gang members threating [his] life to assault or kill [him]," and that this request for protective custody had been denied. *Id.*

He also recounted the January 5, 2014 incident. He explained that, during second shift, he had informed Officers Maldonado and Lindsey that he was having problems with Gabriel Rodriguez, he feared for his safety, and Mr. Rodriguez had threatened him. *Id.* The officers offered no response, and, hours later, Mr. Rodriguez assaulted Mr. Morgan while he was taking a shower. *Id.* Mr. Morgan claims he called out for help, but Officers Maldonado and Lindsey did not respond. *Id.* Once the officers did intervene, Mr. Morgan reports that they did not "call a code" and appeared to treat Mr. Rodriguez favorably. *Id.* He notes that he had been informing Captain Godding about the "big gang problem in [Mr. Morgan's unit] in [his] complaint of January 6, 2014 to Lieutenant Lizon." *Id.* Mr. Morgan made no allegations involving Warden Chapdelaine in this level one grievance or in any other level one grievance. Mr. Morgan's administrative remedy was denied. *Id.*

Mr. Morgan appealed. *Id.* It was on appeal that, for the first time, Mr. Morgan referenced Warden Chapdelaine. *Id.* Specifically, he made reference to his December 2, 2013 Inmate Request Form. *Id.* The Level 2 Review was denied with an indication that Mr. Morgan had exhausted his administrative remedies. *Id.*

On February 22, 2014, Mr. Morgan submitted a grievance that was denied on March 14, 2014. Grievance 131. In it, he stated that he had "written letters to many prison officials seeking urgent needed remedy regarding to my safety and security and fear regarding to my safety due to gang hits and threats to my safety." *Id.* He explained that he had been labeled a "big snitch again" and had been experiencing "ongoing problems and threats of bodily harm by various inmates." *Id.* In particular, he stated that a fellow inmate, De'Angelo D. Gilbert, had been making threats against his life, about which he had purportedly informed Captain Godding. *Id.* Mr. Morgan claimed he did so through the proper channels. *Id.* Mr. Morgan alleged

discrimination, stating that white inmates were granted requests for protective custody, while he was "like a sitting duck waiting to be assaulted or killed." *Id.* His request for protective custody was denied. *Id.*

### B.    Procedural Background

Mr. Morgan, then incarcerated and proceeding *pro se*, sued twenty-one officials or officers employed by the Connecticut State Department of Correction as Defendants alleging various claims under 42 U.S.C. § 1983 ("Section 1983") and Title II of the Americans with Disabilities Act ("ADA"). ECF No. 1.

On initial review, the Court dismissed Mr. Morgan's Section 1983 claims alleging violations of the Fifth, Sixth, and Fourteenth Amendments, as well as the ADA claims against all Defendants and the prison transfer claims against certain Defendants under 28 U.S.C. § 1915A(b)(1). ECF No. 11. The Court also dismissed the claims for monetary damages against all Defendants in their official capacities. *Id*.

The Court concluded that the Eighth Amendment claims of failure to protect and deliberate indifference to safety, the First Amendment retaliation claims and the state law claims of negligence and intentional infliction of emotional distress would proceed but only to the extent that Mr. Morgan sought declaratory and injunctive relief. *Id.*

In September 2015, the Court denied in part and granted in part the Defendants' motion to dismiss, allowing Mr. Morgan to seek discovery on the following claims: (1) the January 2014 failure to protect claim; (2) the claim that certain Defendants were deliberately indifferent to Mr. Morgan's safety when they called him a snitch in front of other inmates; (3) the claim that Defendants were deliberately indifferent to Mr. Morgan's safety because they failed to take any action to protect Mr. Morgan from potential harm when they learned of the conduct of those

Defendants who had called Mr. Morgan a snitch; (4) the specific claims of retaliation; and (5) the state law claim for intentional infliction of emotional distress. ECF No. 53.

In March 2017, the Court granted in part and denied in part Defendants' motion for summary judgment. ECF No. 107. The Court denied summary judgment of Mr. Morgan's Eighth Amendment failure to protect claim against Warden Chapdelaine, Captain Godding, Officers Maldonado and Lindsay arising from the assault by Mr. Rodriguez on Mr. Morgan and as to Mr. Morgan's intentional infliction of emotional distress claim. *Id.* The Court dismissed Mr. Morgan's remaining claims. *Id.*

The Court subsequently appointed counsel to represent Mr. Morgan *pro bono* and, at Mr. Morgan's request, re-opened discovery on Mr. Morgan's remaining claims, consistent with this Court's past practice once *pro bono* counsel has been appointed. ECF No. 112-14; *see, e.g.*, Am. Sched. Order, *Castillo v. Hogan*, No. 3:14-cv-01166 (VAB) (D. Conn. May 5, 2018), ECF No. 63 (re-opening discovery after appointment of counsel).

Defendants now move for summary judgment on Mr. Morgan's remaining claims.[2] ECF No. 127. The Court heard oral argument on the motion on August 16, 2018. ECF No. 143.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving

---

[2] Having allowed Mr. Morgan to take further discovery, the Court, in accord with its inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Deitz v. Bouldin*, __U.S.__, 136 S. Ct. 1885, 1892 (2016), permitted the parties to move for summary judgment for a second time. ECF No. 123.

party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

## III.  DISCUSSION

Defendants have moved for summary judgment arguing that Mr. Morgan's claims are barred as to Ms. Chapdelaine and Mr. Godding because Mr. Morgan failed to exhaust

administrative remedies. All of the Defendants argue that they are entitled to judgment as a matter of law because Mr. Morgan has put no genuine or material facts at issue with respect to his claims of deliberate indifference. Defendants maintain that there are no genuinely disputed issues as to Mr. Morgan's allegations of intentional infliction of emotional distress, and absent any viable claim under 42 U.S.C. § 1983 or any other federal law, the Court should decline to exercise supplemental jurisdiction over Mr. Morgan's state law claims.

### A.      Prison Reform Litigation Act

Defendants argue that Mr. Morgan's claims as to Warden Chapdelaine and Captain Godding are barred because there are no genuinely disputed facts with respect to him having exhausted administrative remedies against these two Defendants. Defs.' Br. at 5. Specifically, Defendants maintain that because Mr. Morgan sought no Level 1 Review with respect to either Warden Chapdelaine or Captain Godding, only grieving them for the first time at the Level 2 Review, he thus failed to exhaust his administrative remedies as to them. Mr. Morgan argues that DOC Administrative Directive 9.6 contains no "name-the-defendant" requirement; neither does the case law support such a requirement.[3] The Court agrees.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the

---

[3] Mr. Morgan rightly points out that he did make claims regarding Captain Godding at the Level 1 Review stage. *See* Grievance No. 115-15-132, Level 1 Review at 8 ("I had been informing unit manager Captain Godding about the big gang problem in his unit . . . .").

inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001).

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants have the burden of proving that a plaintiff has not exhausted claims before filing in court. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

The PLRA requires "proper exhaustion," which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). In other words, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

In *Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850 (2016), the Supreme Court rejected judicially created special exceptions to the PLRA's exhaustion requirement. *See id.* at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement"). The Court concluded that the PLRA includes a single "textual exception"—that an inmate need not exhaust remedies that are not "available" to him or her. *Id.* at 1858.

The Court described three scenarios in which administrative procedures that have been officially adopted by a prison facility may be unavailable to an inmate. *Id* at 1859. First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a remedy might be "so opaque that it becomes, practically speaking, incapable of use" because an

"ordinary prisoner can[not] discern or navigate it" or make sense of what it demands. *Id.*

(citations omitted). Third, an administrative remedy may be unavailable "when prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Id.* at 1860.

Following *Ross*, the Second Circuit, in *Williams v. Correction Officer Priatno*, 829 F.3d

118 (2d Cir. 2016), established a two-part inquiry to guide the analysis of whether a plaintiff has

satisfied the PLRA. First, courts must ask "whether administrative remedies were in fact

available to the plaintiff." *Id.* at 122. Second, a court must consider "whether administrative

remedies were actually available to the aggrieved inmate." *Id.* at 123 (citing *Ross*, 136 S. Ct. at

1858-59).

The DOC provided an administrative grievance system at the time leading up to and

following the January 5, 2014, assault. *See* DOC Administrative Directive 9.6 ("Directive 9.6"),

Defs.' SMF, Ex. D, ECF No. 127-6. The parties do not dispute this; neither do they dispute

whether administrative remedies were "capable of use" by Mr. Morgan "to obtain some relief for

the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted (quoting *Booth*,

532 U.S. at 737–38)

Instead, Defendants argue that Mr. Morgan included no claims against Warden

Chapdelaine and Captain Godding in his Level One Grievance regarding the January 5, 1994,

incident, and thus he has failed to exhaust all available administrative remedies with respect to

these two defendants. *See* Grievance 132. The Court disagrees.

The Supreme Court considered and rejected this exact argument in *Jones*. There, the

Supreme Court addressed whether the PLRA requires a prisoner plaintiff—consistent with the

plaintiff's exhaustion of all available administrative remedies as a condition predicate to

accessing a federal remedy—to have identified, in the first step of the grievance process, "each individual later named in the lawsuit to properly exhaust administrative remedies." 549 U.S. at 205. The Supreme Court answered no.

As in *Jones*, Defendants' procedural rule finds no "textual basis" in the PLRA. *Id.* at 217. The PLRA requires exhaustion of "'such administrative remedies as are available,' but nothing in the statute imposes a 'name all defendants' requirement" that would give any credence to Defendants' proposed rule. *Id.* (internal citation omitted) (quoting § 1997e(a)). The Supreme Court has made plain that the PLRA leaves to the correctional institution's authorities the particular demands of the grievance process and what is required of an inmate to fulfill them. *Id.* at 218.

Here, Directive 9.6 requires that a request for an administrative remedy be "stated simply and coherently," § 5(E)(3), and "free of obscene or vulgar language or content," § 5(E)(5). Directive 9.6 imposes no such "name all defendants requirement," and this Court will not impose one. *See Jones*, 549 U.S. at 218 (rejecting the argument when the procedure makes no mention of naming particular officials); *cf. Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("[D]efendants bear the initial burden of establishing, by pointing to 'legally sufficient source[s]' such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute . . . ." (citation omitted)).

Furthermore, notwithstanding any claim against Warden Chapdelaine at the Level 1 Review, Mr. Morgan's Level 2 Review was denied on the merits, *see* Grievance 132 (denying the grievance as unsupported by evidence), and states that he had exhausted DOC's administrated remedies, *cf. Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011) (holding that PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the

merits); *Osborn v. Williams*, No. 3:14-cv-1386 (VAB), 2017 WL 6731714, at *6 (D. Conn. Dec. 29, 2017) (noting that the administrative remedy was rejected on the basis of timeliness as opposed to the merits and therefore was not exhausted for purposes of the PLRA (citing *Hill*, 657 F.3d at 125)).

Having failed to show any genuinely disputed issues, Defendants' argument fails and the Court denies summary judgment as to whether Mr. Morgan has exhausted all available administrative remedies as to Warden Chapdelaine and Captain Godding.

### B.    Deliberate Indifference

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prisons officials therefore must provide inmates with "the minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prisons must provide inmates with their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety," and a failure to do so violates the Eighth Amendment. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Accordingly, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("The Eighth Amendment . . . imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners." (internal quotation marks omitted)).

To establish an Eighth Amendment violation for either failure to protect or deliberate indifference to safety, an incarcerated plaintiff must show first, "that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm," and second, that the prison official had a "sufficiently culpable state of mind," which in "prison-conditions cases" is

"one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal

quotation marks omitted); *see also Lewis v. Swicki*, 629 Fed. App'x. 77, 79 (2d Cir. 2015) (citing

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). To show deliberate

indifference, the plaintiff must show that "the official kn[ew] of and disregard[ed] an excessive

risk to inmate health or safety," which means that the official must "both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Farmer*, 511 U.S. at 837. Thus, the "deliberate indifference standard

embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d

Cir. 1994); *see also Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010)

(explaining that defendants must be aware of facts supporting an inference that harm would

occur and must actually draw that inference).

Defendants do not challenge whether Mr. Morgan was incarcerated "under conditions

posing a substantial risk of serious harm," so for purposes of this motion only, the Court will

assume that there are no material issues in dispute as to the first component of Mr. Morgan's

failure to protect claim. *Farmer*, 511 U.S. at 834. The Court therefore turns to whether

Defendants acted with deliberate indifference to an increased risk of serious harm to Mr.

Morgan's safety and Security.

### 1. Evidence of Awareness

#### a. Warden Chapdelaine

Defendants argue Warden Chapdelaine was not on notice that Mr. Morgan faced an

unreasonable risk to his safety. The Court agrees.

Defendants argue that, at no time, before or immediately after Mr. Morgan was assaulted

did he indicate that he had informed Warden Chapdelaine that Mr. Rodriguez had been

threatening his life. Mr. Morgan, however, has produced the December 2, 2013 Inmate Request

Form he had directed to Warden Chapdelaine in which he explained that Mr. Rodriguez had

"constantly threatened [him] with bodily harm." Dec. 2, 2013, Inmate Request Form. He also

testified that, after filing the form but before the January 5, 2014, incident he spoke with Warden

Chapdelaine, who acknowledged having received his complaint, but failed to act.

Because vicarious liability is inapplicable to § 1983 suits, to prevail under the statute, a

plaintiff must show that each defendant, through the official's own individual actions, violated

the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Ayers v. Coughlin*, 780

F.2d 205, 210 (2d Cir. 1985) (*per curiam*) (requiring "more than the linkage in the prison chain

of command").

In the Second Circuit, personal involvement in a constitutional wrong may be

demonstrated by competent evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing
> to act on information indicating that unconstitutional acts were
> occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In light of *Iqbal*, the second ground for liability—that liability may be found when a

prison official learns of a violation by way of a report of appeals and fails to act—must be read

narrowly. "Were it otherwise, virtually every prison inmate who sues for constitutional torts by

[prison officials] could name the [supervisor] as a defendant since the plaintiff must pursue his

prison remedies, and invariably the plaintiff's grievance will have been passed upon by the

[supervisor]." *Anderson*, No. 3:06-cv-1968 (HBF), 2007 WL 3025292, at *6 (D. Conn. Oct. 16, 2007) (quoting *Thompson v. New York*, No. 99 CIV. 9875 (GBD) (MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001)). Furthermore, the example from which the theory arose, *U.S. ex rel. Larkins v. Oswald*, 510 F.2d 583 (2d Cir. 1975), involved a supervisor who was required as a matter of statute to report to the Commissioner weekly on all inmates held in segregation and therefore was "chargeable with knowledge of [the] appellee's confinement," *id.* at 598; *see also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citing *Oswald*, 510 F.2d at 589, when setting out the rule).

When seeking a remedy under Section 1983, personal involvement therefore cannot be established based on the receipt of a letter or grievance. *Anderson v. Ford*, No. 3:06-cv-1968 HBF, 2007 WL 3025292, at *6 (D. Conn. Oct. 16, 2007) (citing *Woods v. Goord*, No. 01 Civ. 3255 (SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases); *see also Goris v. Breslin*, 402 Fed. App'x 582, 584 (2d Cir. 2010) (finding no personal involvement where the official received two letters from the plaintiff, which the official referred to other individuals for investigation); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Receipt of letters or grievances, by itself, does not amount to personal involvement." (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (noting that an inmate's letters and the Commissioner's responses to them would not demonstrate personal involvement))) (listing cases); *see also Ziemba v. Lynch*, No. 3:11-cv-974 SRU, 2013 WL 5232543, at *7 (D. Conn. Sept. 17, 2013) ("The fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official." (citing *Rivera v. Fischer*, 655 F. Supp. 2d 235, (W.D.N.Y. 2009)) (listing cases). An allegation that an official ignored a prisoner's letter or grievance, standing alone, likewise, is insufficient to establish personal liability for purposes of

section 1983. *Anderson*, 2007 WL 3025292, at *6 (citing *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003)).

Personal involvement may be found, however, where an official receives and acts on or otherwise reviews or responds to a prisoner's complaint. *Anderson*, 2007 WL 3025292, at *7; *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (discussing how "some courts in the Second Circuit distinguish between the *degree* of response—for example, between summarily denying a grievance and denying it in a detailed response that specifically addresses the plaintiff's allegations").

Mr. Morgan's Inmate request form, standing alone, is insufficient to create a genuine issue as to whether Warden Chapdelaine was on actual notice. Mr. Morgan acknowledged that his plea went unanswered. *See, e.g.*, *Ramos v. Artuz*, No. 00 CIV 0149 (LTS) (HBP), 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001) (finding personal involvement where the defendant sent the plaintiff numerous letters containing some explanation or justification concerning the issues raised by the plaintiff in his letters to the superintendent, who was merely the recipient of the letters).

 He has also failed to enter into the record any evidence as to a DOC policy or policies that address protective custody or housing assignments as a general matter, or more specifically, who is responsible for making protective custody determinations, including whether an inmate can make a verbal request for protective custody or a housing change, how that process interfaces with administrative exhaustion procedures, if at all, or what role Warden Chapdelaine plays these processes, if any.

Absent indicia of more than a mere "linkage in the prison chain of command," *Ayers*, 780 F.2d at 210, "anyone who would listen" to Mr. Morgan about his safety concerns would untenably face liability. Morgan Aff. ¶ 41.

Having drawn all inferences in favor of Mr. Morgan, the Court finds that no reasonable trier of fact could find in his favor and that Warden Chapdelaine is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (requiring "the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*," lest judgment should enter as a matter of law) (citation omitted)).

### b. Captain Godding

Defendants argue that there exists no genuine dispute as to whether Captain Godding was on actual notice of Mr. Morgan's alleged increased risked of serious harm to his person. The Court agrees.

Mr. Morgan has offered the November 14, 2013, Inmate Request Form as evidence that Captain Godding knew of an increased likelihood of danger for Mr. Morgan. As with Warden Chapdelaine, Mr. Morgan's November Inmate Request Form, standing alone, is insufficient to create a genuine issue as to whether Captain Godding was on actual notice. Again, this is a matter of proof, and Mr. Morgan has failed to connect, through credible evidence, *e.g.*, a policy, regulation, custom, or response to the Inmate request form, Mr. Godding and the remedy Mr. Morgan was seeking.

Mr. Morgan testified that Captain Godding acknowledged receiving the form and in response made several derogatory comments to Mr. Morgan. But Mr. Morgan's allegations with respect to Captain Godding's comments "amount to no more than '[i]nsulting or disrespectful

comments,' a 'hostile manner,' or 'sarcastic comments,'" which the Second Circuit has held are "'simply *de minimis*' acts that fall 'outside the ambit of constitutional protection.'" *Toliver v. City of New York*, 530 Fed. App'x 90, 92 (2d Cir. 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003))**.**

After reviewing the record, Mr. Morgan has failed to show a genuine issue for trial as to whether Captain Morgan knew of an increased risk of serious harm to Mr. Morgan's safety and security. Summary judgment therefore is granted on Mr. Morgan's deliberate indifference claim as to Captain Godding.

### c.       Officer Maldonado and Officer Lindsay

Mr. Morgan asserts that, on the day of the assault but before it occurred, he had informed Officers Maldonado and Lindsay, as they made their rounds, that Mr. Rodriguez had threatened him. Although the exact parameters of her authority are less than clear, the record also reflects that at least Officer Maldonado had the authority to separate Mr. Morgan from the general prison population. Maldonado Aff. ¶ 5 (testifying that she placed Mr. Morgan in the Restrictive Housing Unit once he reported that he had been assaulted). Mr. Morgan argues that their failure to act after he warned them that he was in danger demonstrates their deliberate disregard for his safety.

Mr. Morgan also argues that Officer Maldonado and Officer Lindsay acted with deliberate indifference when they ignored his calls for help and allowed Mr. Rodriguez to continue to brutalize him. He argues that he cried out for help to no avail and that both officers should have been able to hear his cries.

"[C]onstru[ing] the evidence in the light most favorable to [Mr. Morgan] and . . . draw[ing] all reasonable inferences in [his] favor," Mr. Morgan has established no genuine issue

as to whether Officer Maldonado or Officer Lindsay were aware that Mr. Morgan faced an increased risk of serious harm. *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).

### 2.    Evidence that Inference was Drawn

#### a.    Advance Warning

Mr. Morgan has failed to show a genuine issue for trial as to whether Officers Maldonado and Lindsay, after he warned them that he was concerned for his safety, "disregard[ed] an excessive risk to [his] safety." *Farmer*, 511 U.S. at 837. Because Mr. Morgan allegedly informed Officers Maldonado and Lindsay about the risk of harm from Mr. Rodriguez before he was assaulted, he argues that a reasonable juror could infer that he was in danger and that the officers should have taken steps to protect Mr. Morgan from this harm. *See DeShaney*, 489 U.S. at 200 (requiring that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," it must "provide for his basic human needs," including "reasonable safety").

But such an inference would be improper and based on speculation, and not admissible evidence in this record. Because the record contains only testimony about what Mr. Morgan allegedly told Officers Maldonado and Lindsay, it does not also contain evidence about what these correctional officers knew about Rodriguez and what steps they could have taken, once in possession of the information allegedly provided by Mr. Morgan. *See Farmer*, 511 U.S. at 844 (providing that a prison official who "actually knew of a substantial risk to inmate health or safety," but responded in a reasonable manner to the risk, "may be found free from liability" under the Eighth Amendment, "even if the harm ultimately was not averted").

Indeed, absent some evidence probative that Officers Maldonado and Lindsay concluded that Mr. Rodriguez posed a risk to Mr. Morgan and disregarded this fact, notwithstanding Mr. Rodriguez's ability to assault Mr. Morgan under these circumstances, these officers' actions or omissions do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 837 (requiring evidence that an official was "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Aponte v. Arrington*, No. 3:99-cv-847 (WWE), 2009 WL 1138717, at *7 (D. Conn. Apr. 28, 2009) (granting summary judgment when the plaintiff failed to provide evidence that the plaintiff's assailant was in a position to assault the plaintiff). Mr. Morgan has failed to offer any such evidence. The Supreme Court has specifically cautioned that, in assessing claims that conditions of confinement are cruel and unusual, "courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Without more, Mr. Morgan's possible speculation as to Officer Maldonado's and Lindsay's alleged disregard of the increased risk of harm would not be admissible at all. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see, e.g.*, *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citing Fed. R. Evid. 602 in stating that where a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge (internal quotation marks omitted)); *cf. Rivera v. Brennan*, No. 3:16-cv-330 (VAB), 2018 WL 658832, at *6 (D. Conn. Jan. 31, 2018) (finding that the plaintiff's speculation as to what a witness would think about the situation, standing alone, is not sufficiently probative

of whether "a reasonable person" would find her supervisor's conduct was "hostile or abusive" on account of her sex); *Reilly v. City of W. Haven*, No. 3:02-cv-1346 (SRU), 2005 WL 1293969, at *4 (D. Conn. Mar. 31, 2005) ("[The plaintiff] points only to his own affidavit, his own deposition testimony, and a letter he wrote to a member of the City Council to buttress his claim that the Mayor's actions were retaliatory. The problem is that these documents only contain statements concerning [the plaintiff's] beliefs . . . that [the Mayor] acted to prevent him from obtaining a job . . . .").

Viewing the record evidence in the light most favorable to Mr. Morgan, he has failed to produce evidence that would allow a reasonable juror to find that Officers Maldonado and Lindsay acted unreasonably or with deliberate indifference to his safety before he was assaulted by Mr. Rodriguez. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017) ("[T]he court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" (quoting *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016)).

### b.    During and After the Assault

Similarly, a reasonable juror could not conclude that Officers Maldonado and Lindsay should have intervened to assist Mr. Morgan, while he was under attack. The evidence in the record is not sufficient to allow for a reasonable inference that either officer could or should have heard Mr. Morgan's pleas for help. For example, Mr. Morgan provides no evidence from which a jury could reasonably conclude that any alleged harm to Mr. Morgan was due to these officers' deliberate indifference to his safety and security.

Mr. Morgan's speculative testimony as to what Officer Maldonado and Officer Lindsay should have heard cannot support his claim. *See* Fed. R. Evid. 602 ("A witness may testify to a

matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Rivera*, 2018 WL 658832, at \*6 (finding that the plaintiff's speculation was insufficiently probative of whether "a reasonable person" would find her supervisor's conduct was "hostile or abusive" on account of her sex).

Furthermore, Mr. Morgan's testimony that Officer Maldonado was dismissive, failed to call a code, and allegedly treated Mr. Morgan as if he was the aggressor, is not sufficiently probative of the central inquiry here: whether Officer Maldonado would "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [she drew] the inference." *Farmer*, 511 U.S. at 835. This testimony too is inadmissible as speculative. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mr. Morgan has failed to demonstrate through credible evidence that Defendants' failures, if any, are within the scope of the Eighth Amendment. Having viewed all inferences in the light most favorable to Mr. Morgan, no reasonable trier of fact could find in his favor based on this record regarding what happened when Mr. Rodriguez allegedly assaulted Mr. Morgan.

Defendants Chapdelaine, Captain Godding, Officer Maldonado and Officer Lindsay therefore are entitled to judgment as a matter of law on Mr. Morgan's deliberate indifference claim. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88 (requiring "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" lest judgment should enter as a matter of law) (citation omitted)).

### C.  Supplemental Jurisdiction of State Law Claims

Mr. Morgan argues that Defendants acted with the intention to inflict him with emotional distress. Defendants argue that the Court should decline to exercise supplemental jurisdiction over the claim. The Court agrees.

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ( "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Because the Court has granted summary judgment on Mr. Morgan's federal claims, it declines to exercise supplemental jurisdiction over his remaining state law claims. *See, e.g.*, *Figueroa v. Semple*, No. 3:12-cv-00982 (VAB), 2015 WL 3444319, at *8 (D. Conn. May 28, 2015) (declining to exercise supplemental jurisdiction). Mr. Morgan's "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 Fed. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

All state law claims asserted are dismissed.

## IV.   CONCLUSION

For the reasons discussed above, the motion for summary judgment is **GRANTED**.

The Clerk of the Court is instructed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of August, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE